Scileppi, J.
Plaintiff corporation, engaged in the business of painting, entered into a written contract with defendant, New York City Transit Authority (hereinafter referred to as the Authority), for the painting of certain work shops and other areas at the 207th Street Yard of the Independent Subway Division, at a contract price of $149,000. The contract was awarded after competitive bidding and, as required by law (Public Authorities Law, § 2604), plaintiff certified that its bid had been arrived at independently and had been submitted to the Authority without collusion with any other bidder.* In compliance with section 2601 of the Public Authorities Law, the contract contained a clause providing that it could be can-celled or terminated by the Authority upon refusal of an officer of the contractor when called before a Grand Jury to testify concerning any contract or transaction had with the State or any of its political subdivisions or any public authority, or to sign a waiver of immunity or answer relevant questions with respect thereto.
Work was started under the contract but, before completion, the Authority sent a letter to the plaintiff on April 16, 1965 informing it that the District Attorney of New York County had officially advised the Authority that Jerry Jerome, an officer of the plaintiff corporation, had refused to waive immu *190 nity when subpoenaed to testify before the Grand Jury of New York County in connection with an investigation relating to bid rigging on public painting contracts, and further informed the plaintiff that in accordance with the provisions of the contract, the Authority was thereby exercising its right to cancel and terminate it. Although plaintiff initially questioned the right of the Authority to take such action, it has by bringing this suit chosen to abandon any claim on the contract and to sue instead on the basis of quantum meruit.
Before the action was commenced, the plaintiff made a written demand on the Authority on August 25, 1965 for payment of $87,910 as the claimed reasonable value of the work performed but unpaid. Thereupon the Authority, pursuant to the Public Authorities Law (§ 1212, subd. 5), notified the plaintiff to appear for examination and be sworn and testify to any facts relevant to its claim. According to the Authority, the examination proved abortive because plaintiff’s attorney interposed numerous objections to the questions propounded and refused to allow the plaintiff’s witness to answer and also refused to produce any other witness having knowledge of the matters inquired about. Plaintiff states that its witness answered questions “relevant ” to its claim, but admits that the witness refused, on the advice of counsel, to answer any questions respecting the manner in which the plaintiff’s bid was prepared.
Upon the Authority’s refusal to pay the claim, this action was brought, wherein, among other-things, the Authority interposed as a second affirmative defense that the contract had been obtained by fraudulent and collusive bidding on the part of the plaintiff. In substantiation of the defense, the answer recites the refusal of the plaintiff’s officer, Jerry Jerome, to waive immunity before the New York County Grand Jury investigating collusive bidding on public painting contracts, the fact that four other witnesses summoned before the Grand Jury and who were connected or associated with four of the eight firms bidding on the contract involved here had likewise refused to waive immunity, and that the corporate plaintiff and Jerry Jerome were both indicted for perjury in the first degree by the Grand Jury for submitting false noncollusive bidding statements to the New York City Housing Authority in order to procure contracts from that agency.
*191 Plaintiff thereafter moved (1) to dismiss the Authority’s second affirmative defense on the ground that a defense was not stated; (2) for summary judgment on the merits; (3) for partial summary judgment in the amount of $44,770. The court at Special Term struck the .second affirmative defense and awarded partial summary judgment upon finding that the amount claimed was concededly due plaintiff for services rendered.
On appeal, the Appellate Division, First Department, two Justices dissenting, affirmed. The court was of the opinion that the defense was properly stricken and recovery allowed because “ Subdivision (b) of .section 2601 of the Public Authorities Law which provides for cancellation of a contract and disqualification for a period of five years in the submission of bids or entry into contracts with a public authority, specifically delineates the penalty or forfeiture required to be imposed for refusal to testify before a Grand Jury with respect to transactions had with any public body ’ ’ and £ ‘ It is clear that no element of public policy, as so delineated, calls for a denial of recovery for work done”. The court stressed that: “This is particularly so, in view of the legislative mandate contained in the statute which specifically provides £ but any monies owing by the public authority for goods delivered or work done prior to the cancellation or termination shall be paid.’ ” The court further appeared to hold that the defense was dismissible because it was not supported by “ positive evidence ”, although the suit is still in its initial stages and the Authority has not had the opportunity to develop evidentiary facts by pretrial examination or other disclosure proceedings.
We are of the opinion that the Appellate Division’s determination is erroneous and should, therefore, be reversed.
To be sure, the statute declares that, upon cancellation of a public contract because of a refusal to waive immunity or testify before a Grand Jury, payment must be made for goods delivered or work done prior to cancellation. That, however, is not the end of the matter as far as this case is concerned. The defense of illegality here pleaded is not based upon the refusal of plaintiff’s officer to waive immunity when called to testify before the Grand Jury, but on alleged fraudulent and collusive bidding practices engaged in by the plaintiff in order to obtain the award of the contract. The refusal to waive immunity is but one ele *192 ment in the totality of circumstances which constitute the defense. The statutory language is simply not broad enough to encompass a situation where, as in this case, fraud in the inducement of the contract is claimed. The fact that the contract was cancelled pursuant to section 2601 of the Public Authorities Law has little, if anything, to do with this case; it is collateral to and tends to becloud the prime issue which is whether a defense of fraudulent and collusive bidding is legally sufficient in a suit brought against a public authority for the reasonable value of work done.
At common law the prevailing view was that a secret combination or collusive scheme by bidders for public work, whereby actual competition among bidders is prevented or diminished, renders void, or at least voidable, a contract for the work let to any participant in the combination or scheme and recovery was not permitted, even on a quantum meruit basis (Ann., 62 A. L. R. 224-225, and cases cited therein). Thus, in People v. Stephens (71 N. Y. 527) involving a combination among bidders for the construction of a canal, by which competition was lessened and the work let at higher prices, Allen, J., in a concurring opinion said (pp. 546-547): “ The bargain and combination of the contractors immediately preceding the lettings to Leahy and others, and by which the privilege of bidding for the work upon a particular contract secured sections to one individual without competition, were against public policy and illegal, and if they resulted in a letting at unreasonable prices, authorized a rejection of the proposal and a repudiation of the contract ”.
California, for example, holds that any agreement which tends to deprive the government of competition in bidding is unlawful (Swan v. Chorpenning, 20 Cal. 182), and, where it is shown that the bids made were collusive and a contract is awarded by public officers in ignorance of such a combination, the resulting contract is void as against public policy (City of Oakland v. California Constr. Co., 15 Cal. 2d 573; Morgan v. Gove, 206 Cal. 627; see, also, 10 McQuillin, Municipal Corporations [3d ed.], § 29.69.)
The provisions of the statutes and ordinances of this State requiring competitive bidding in the letting of public contracts evince a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible *193 price. In addition, the obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption. They ‘1 are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest ” (10 McQuillin, op. cit., § 29.29, p.322; emphasis added). To this end, in a long line of cases starting with Brady v. Mayor of City of N. Y. (20 N. Y. 312) and ending most recently with Albany Supply & Equip. Co. v. City of Cohoes (18 N Y 2d 968), we have consistently held, primarily on public policy grounds, that, where the city fathers have deviated from the statutory mode for the expenditure of funds and letting of contracts, the party with whom the contract was made could not recover in quantum meruit or quantum valebat. The result should not differ where the due administration of the bidding statute is interfered with and competitive bidding thwarted by the unlawful collusion of the bidders themselves, resulting in a gross fraud upon the public. A contract procured through fraudulent and collusive bidding is void as against public policy and recovery cannot be had upon any theory.
The. continuing growth of our cities and the expansion of governmental services on all levels has necessitated, over the years, the letting of greater numbers of public contracts. While the amount of money involved in these contracts was relatively small a few decades ago, today the amount is astronomical. It is, therefore, a matter of grave public concern that there be absolute honesty in the procuring of a public contract. If we are to effectively deter the unscrupulous practice of fraudulent and collusive bidding on public contracts, we cannot look alone to existing penal sanctions. The nature of the wrong is such that it is not easily discovered but, when it is, we make it quite clear that courts of this State will decline to lend their aid to the fraudulent bidder who seeks recovery.
The majority in the Appellate Division was apparently of the opinion that section 2601 of the Public Authorities Law was intended to restrict the common-law defense asserted herein by the Authority. The minority, however, noted—and we agree — that “ There is no basis for holding that [the Authority’s] statutory and contractual right to terminate is in lieu of its *194 commondaw right to defeat a claim rooted in illegality. The legislative history, to the contrary, spells out the intention to formulate an additional and cumulative remedy in order to discourage and eliminate arrangements against competitive public bids ”. Consequently, we hold that with respect to public contracts the defense interposed herein is legally sufficient.
Apart from the sufficiency of the defense, there is in this case a serious pleading problem. CPLR 3016 (subd. [b]) provides: “ Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust, or undue influence, the circumstances constituting the wrong shall be stated in detail”. The plaintiff relies on this statute to support its contention that summary judgment was properly granted because it is obvious from the pleading of the defense that it is based upon mere suspicion, unsupported by evidentiary facts, and that the circumstances constituting the fraud are not pleaded in detail. Under the facts of this case, we do not find this argument persuasive. It is almost impossible to state in detail the circumstances constituting a fraud where those circumstances are peculiarly within the knowledge of the party against whom the defense is being asserted. We recognized this to be true in Procter & Gamble v. Lawrence Amer. Field Warehousing Corp. (16 N Y 2d 344, 362) when we said: “ summary judgment is not justified where there are likely to be defenses that depend upon knowledge in the possession of the party moving for judgment, which might well be disclosed by cross-examination or examination before trial (Kamen v. Metropolitan Life Ins. Co., 6 A D 2d 406, affd. 6 N Y 2d 737; Suslensky v. Metropolitan Life Ins. Co., 180 Misc. 624, affd. 267 App. Div. 812; West Virginia Pulp & Paper Co. v. Merchants Mut. Ins. Co., 10 A D 2d 451; 5 Carmody-Wait, New York Practice, p. 145).” Although, as the plaintiff points out, nine months elapsed from the institution of this suit until the motion for summary judgment was made, we do not think that this delay was so inordinate as to prevent the Authority from having its day in court. Accordingly, we conclude that the order appealed from should be reversed and the case remitted to Special Term with directions that the motion to strike the second affirmative defense and for partial summary judgment be denied, with leave to plaintiff to renew after completion of all pretrial proceedings.
*195 We have considered the Authority’s other arguments and find them to be without merit.
Accordingly, the order appealed from should be reversed, with costs in all courts.
Chief Judge Fuld and Judges Burke, Bergan, Keating, Breitel and Jasen concur.
Order reversed, with costs in all courts, and case remitted to Special Term for further proceedings in accordance with the opinion herein.

 It should be noted that under section 103 of the General Municipal Law “A person or corporation who conspires to prevent competitive bidding on a contract for public work or purchase advertised for bidding shall be guilty of a misdemeanor as provided in the penal law”. (Subd. 7 as added by L. 1960, ch. 997, § 3, and prior to amdt. by L. 1967, ch. 680, § 65.)