■ Kevin Pludeman et al., Respondents-Appellants, v Northern Leasing Systems, Inc., et al., Appellants-Respondents. [837 NYS2d 10]—

Order, Supreme Court, New York County (Sherry Klein Heitler, J.), entered on or about April 7, 2005, which granted defendants' motion to dismiss the complaint in part, modified, on the law, to reinstate as against the corporate defendant the cause of action for breach of contract, and otherwise affirmed, without costs.

The amended complaint states a cause of action for fraud. It alleges in fair detail the way in which defendants or their agents purposely concealed three pages of the four-page equipment lease entered into by each of the plaintiffs. The alleged concealment finds support in the first page of the lease, which contains all of the elements that would appear to form a binding contract, including the signature line, a personal guaranty, and forum selection, jury waiver and merger clauses, with the only references to the additional pages of the lease being in very small print (*see Broder v MBNA Corp.*, 281 AD2d 369, 370 [2001]). Further tending to show an intentional and deceptive concealment are allegations that defendants did not provide plaintiffs with fully executed copies of the leases and overcharged them by deducting amounts from their bank accounts greater than those called for by the leases.

We disagree with defendants' contention that plaintiffs' fraud allegations fail to satisfy the pleading requirements of CPLR 3016 (b) as to the individual defendants. The complaint alleges that the individual defendants are the president, vice-president and chief information officer, vice-president of sales, and vice-president of operations of corporate defendant. Plaintiffs are entitled to "the benefit of every possible favorable inference" on a motion to dismiss (*see Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]). At this early juncture, according plaintiffs' complaint the most favorable inferences, one can readily deduce, given the corporate positions and titles of the individual defendants, that these individuals actually operate the day-to-day business of corporate defendant, and consequently were involved in or knew about the alleged fraudulent concealment of most of the lease. At this prediscovery stage, plaintiffs

are understandably unable to further state the details of the individual defendants' personal participation in, or actual knowledge of, the alleged concealment (*see Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 44 [1980]), as those facts are "peculiarly" within their knowledge (*see Commerce & Indus. Ins. Co. v Globe Off. Supply Co.*, 266 AD2d 165, 165-166 [1999]). "Indeed, the pleading requirements of CPLR 3016 (b) should not be interpreted so strictly as to require specificity where it may be impossible to state in detail the circumstances constituting a fraud" (*Kaufman v Cohen*, 307 AD2d 113, 120-121 [2003] [internal quotation marks omitted]), thus "prevent[ing] an otherwise valid cause of action" (*Lanzi v Brooks*, 43 NY2d 778, 780 [1977]).

The cause of action for breach of contract is sufficiently stated by the allegations of overcharges (*see Graphic Offset Co. v Torre*, 78 AD2d 788 [1980]). The dismissal of the cause of action for breach of the covenant of good faith and fair dealing should be upheld on the ground the claim is duplicative of the reinstated contract cause of action.

Plaintiffs fail to plead a RICO violation (18 USC § 1962 [c]). While their allegation that the corporate defendant and its executive officers made up the enterprise may satisfy RICO's "distinct enterprise" requirement (*see Cedric Kushner Promotions, Ltd. v King*, 533 US 158, 160-163 [2001]), the allegations underlying this cause of action are otherwise deficient. Plaintiffs fail to plead the alleged predicate acts of mail fraud and wire fraud with sufficient particularity (*see First Capital Asset Mgt., Inc. v Satinwood, Inc.*, 385 F3d 159, 178 [2d Cir 2004]). The amended complaint alleges that defendants mailed letters to plaintiffs on specified dates but contains no information concerning the statements in those letters. Likewise, the wire fraud allegations merely state the dates and times of defendants' telephone conversations with plaintiffs without providing any details about the conversations. While the factual information regarding the exact role each individual defendant played in the alleged fraudulent scheme "lies peculiarly within [defendants'] knowledge" (*DiVittorio v Equidyne Extractive Indus., Inc.*, 822 F2d 1242, 1248 [2d Cir 1987]), pleading the details contained in the communications, of which plaintiffs did have knowledge, is not similarly excused from the specific pleading requirements in cases of fraud (*see id.* at 1247).

Dismissal of the underlying substantive RICO claim mandates dismissal of the conspiracy claim (*see McLoughlin v Altman*, 1993 WL 362407, *5, 1993 US Dist LEXIS 12677, *15 [SD NY 1993], *affd* 22 F3d 1091 [2d Cir 1994]; *FD Prop. Holding, Inc. v U.S. Traffic Corp.*, 206 F Supp 2d 362, 373 [ED NY 2002]).

Plaintiffs' allegations of defendants' fraudulent motive and tortious conduct aimed at the public generally suffice to plead a claim for punitive damages under both the breach of contract and common-law fraud causes of action (*see New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 316 [1995]; *Gamiel v Curtis & Riess-Curtis, P.C.*, 16 AD3d 140, 141 [2005]).

The portion of defendants' motion seeking to strike the class action allegation was properly denied as premature (*see Bernstein v Kelso & Co.*, 231 AD2d 314, 323 [1997]). Neither attorneys' fees nor sanctions are warranted.

We have considered the parties' other arguments for affirmative relief and find them unavailing. Concur—Mazzarelli, J.P., Marlow and Buckley, JJ.

Andrias and McGuire, JJ., concur in part and dissent in part in a separate memorandum by McGuire, J., as follows: I cannot agree with the majority that plaintiffs' allegations of fraud with respect to the individual defendants satisfied CPLR 3016 (b). Accordingly, I would grant defendants' motion to dismiss the cause of action for fraud insofar as it is asserted against the individual defendants.

Plaintiffs allege that "representatives and salesmen" (collectively, the sales representatives) of defendant Northern Leasing Systems, Inc., a company that finances equipment leases for small businesses, employed deceptive sales presentations that fraudulently induced plaintiffs to sign their respective lease agreements.* Plaintiffs also assert this fraud claim against four individual officers of Northern Leasing Systems—Jay Cohen (president), Steve Bernardone (vice-president), Rich Hanh (vice-president) and Sara Krieger (vice-president). The pertinent allegations in the amended complaint are as follows:

"22. Defendants designed and perpetrated . . . a fraudulent scheme to defraud small businessmen . . . by wilfully concealing, and/or orchestrating the concealment of 3 of the 4 pages of the standard form Lease and Personal Guarantee which contain extremely material but highly onerous terms . . . .

"24. To facilitate this fraudulent scheme, defendants drafted the Lease and Personal Guarantee such that class members have to sign on the very first page of the Lease and Personal Guarantee. Since the signature of parties to a document is always at the end of the document, Class members are led to

---

* The alleged deceptive sales presentations consisted of the sales representatives both presenting form lease agreements to clients on clipboards, which assertedly prevented the clients from discovering that there were multiple pages to the agreements, and hurrying the clients for their signatures.

believe that the Lease and Personal Guarantee is a one page document containing all terms of the lease. . . .

"33. Defendants are well aware of th[e] routine concealment of 3 of the 4 pages of the Lease and Personal Guaranty. Defendants are also aware that their representatives and salesmen routinely do not give a copy of the Lease to Class members. . . .

"154. Defendants conducted a fraudulent scheme to entrap Class members into highly overpriced leases with extremely onerous terms. They wilfully and knowingly made, or caused to be made, affirmative misrepresentations of material facts in furtherance of this scheme. They also wilfully and knowingly concealed material facts from Class plaintiffs and other Class members, and routinely failed to give them a copy of the lease or even reveal the existence of more than the first page of the lease. Defendants knew the falsity of the misrepresentations at the time these misrepresentations were made. Defendants also knew the material nature of the facts that they wilfully concealed from Class members, and that defendants ought to have disclosed these facts at that time to the Class members. . . . Class plaintiffs and other Class members relied upon defendants' representations, and were unaware of the falsity or misleading nature of the representations. Class plaintiffs and other Class members' reliance was reasonable under the circumstances. As a result of such reliance, Class plaintiffs and other Class members sustained damages."

"Where a cause of action . . . is based upon misrepresentation [or] fraud . . . the circumstances constituting the wrong shall be stated in detail" (CPLR 3016 [b]). "CPLR 3016 (b) requires only that the misconduct complained of be *set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of* and is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud" (*P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 377 [2003] [emphasis added and internal quotation marks omitted], quoting *Lanzi v Brooks*, 43 NY2d 778, 780 [1977]).

To satisfy CPLR 3016 (b) with respect to the alleged fraud of the individual defendants, plaintiffs were required to plead both the general elements of fraud, i.e., misrepresentation of a material fact, scienter, justifiable reliance, and injury (*Sirohi v Lee*, 222 AD2d 222 [1995], *lv dismissed and denied* 88 NY2d 897 [1996]), and that the individual defendants participated in or had knowledge of the fraud (*see Polonetsky v Better Homes Depot*,

97 NY2d 46 [2001]). However, no allegations were directed at any of the individual defendants. Rather, lumping all of the defendants together, plaintiffs allege that "the defendants" knowingly concealed three of the four pages of the lease and drafted the lease in such a manner that they misrepresented the true number of pages of the lease (*see Ramos v Ramirez*, 31 AD3d 294 [2006]; *cf. Caprer v Nussbaum*, 36 AD3d 176, 201-203 [2006]; *Backer v Lewit*, 180 AD2d 134 [1992]). In the course of reciting the facts giving rise to their respective claims, the named plaintiffs fail to identify any fraudulent acts on the part of the individual defendants—their allegations of fraud are based on the conduct of the sales representatives. Moreover, plaintiffs merely allege in conclusory terms that "the defendants" knew of the practices of the sales representatives (*see Dumas v Fiorito*, 13 AD3d 332 [2004] [conclusory allegations of fraud do not satisfy CPLR 3016 (b)]; *Scomello v Caronia*, 232 AD2d 625 [1996] [same]; *Sforza v Health Ins. Plan of Greater N.Y.*, 210 AD2d 214 [1994] [same]). The record does not indicate the total number of corporate officers of Northern Leasing Systems, but it is important to emphasize that under the majority's approach every such officer could be sued. Given the absence of any detail regarding the ostensible knowledge of the individual defendants about the alleged fraudulent practices of the sales representatives, the amended complaint failed "to clearly inform [the individual] defendant[s] with respect to the incidents [of fraud] complained of" (*P.T. Bank Cent. Asia*, 301 AD2d at 377).