10 N.Y.3d 486 (2008)
890 N.E.2d 184
860 N.Y.S.2d 422
KEVIN PLUDEMAN et al., Respondents,
v.
NORTHERN LEASING SYSTEMS, INC., et al., Appellants.
Court of Appeals of the State of New York.
Argued March 18, 2008.
Decided May 6, 2008.
*487 Moses & Singer LLP, New York City (Abraham Y. Skoff, Robert D. Lillienstein and Jayson D. Glassman of counsel), and Epstein Becker & Green, P.C. (Barry A. Cozier of counsel), for appellants.
Chittur & Associates, P.C., New York City (Krishnan S. Chittur, H. Rajan Sharma and Andrey Strutinskiy of counsel), for respondents.
*488 Mayer Brown LLP, New York City (Philip Allen Lacovara, Lauren R. Goldman and Kwaku A. Akowuah of counsel), and National Chamber Litigation Center, Inc., Washington, D.C. (Robin S. Conrad of counsel), for Chamber of Commerce of the United States of America, amicus curiae.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO and PIGOTT concur with Judge JONES; Judge SMITH dissents in a separate opinion in which Judge READ concurs.

*489 OPINION OF THE COURT
JONES, J.
The sole issue before us is whether plaintiffs sufficiently pleaded a cause of action for fraud against individually-named corporate defendants pursuant to CPLR 3016 (b). Under the circumstances presented, we hold that they have.
Plaintiffs are small business owners from various states, including Missouri, Texas, Washington and New York. Defendant Northern Leasing Systems, Inc. (NLS) and the individual defendants, its top management, are financiers of small business equipment.[1]
Plaintiffs' amended complaint stated causes of action for, among other things, fraud. Specifically, plaintiffs alleged that they entered into lease agreements and personal guarantees (collectively, leases) for POS terminals that, through defendants' deceptive practices, hid material and onerous lease terms.
According to plaintiffs, defendants' sales representatives presented them with what appeared to be a one-page contract on a clipboard, thereby concealing three other pages below. This single page appeared to cover all of the material terms of a contract, including name, address, schedule of payments, bank and equipment authorizations, the lease term amount and a *490 signature block for both parties. The first page, however, did not contain information plaintiffs later discovered in the other three pages. Among such concealed items was the requirement that the lessee insure the equipment against all risk of loss or damage and provide NLS with proof of insurance. In the absence of such proof, lessees were deemed to have purchased a loss and damage waiver (of their obligation to insure) for a fee that NLS could change from time to time. In addition, the undisclosed pages provided for automatic electronic deductions of potentially unlimited duration. The concealed pages also contained the following terms: a no cancellation clause, a no warranties clause, absolute liability for insurance obligations, a late charge clause, and provisions for attorneys' fees and New York as the chosen forum.
Further, although the paragraph authorizing automatic deductions found on the first page referenced paragraph 11, found on page three of the contract, it was in extremely small print. Plaintiffs acknowledge that the bottom of the first page of the contract read "Page 1 of 4." Nevertheless, plaintiffs' main contention is that the circumstances under which they were presented with the main first page, as described above, were allegedly fraudulent. First, plaintiffs alleged that the "Page 1 of 4" notation, allegedly in "microprint," was, under the circumstances, insufficient to apprise them of the lease's continuation.[2] Further, they alleged that they were rushed into signing the contract and were not given a complete, executed copy of the lease, much less affirmatively told, in context, that there was more to what they were signing. In order to obtain such a copy, plaintiffs had to use a 1-800 number to request one from NLS. Finally, plaintiffs alleged that they did not become aware of the hidden pages of the lease until they attempted to either cease the electronic deductions or terminate the lease altogether.
Pursuant to CPLR 3211, defendants moved to dismiss, among other things, plaintiffs' fraud claim as against the individual defendants. Supreme Court denied that branch of the motion, holding that the amended complaint sufficiently pleaded a cause of action for fraud against the individual defendants. On appeal, defendants argued that plaintiffs' allegations of fraud failed to satisfy the pleading requirements of CPLR 3016 (b) as to the individual defendants.
*491 Rejecting defendants' contention, the Appellate Division modified, on the law, and otherwise affirmed, determining that plaintiffs' amended complaint satisfied CPLR 3016 (b). The court stated that "one can readily deduce, given the corporate positions and titles of the individual defendants, that these individuals actually operate the day-to-day business of [the] corporate defendant, and consequently were involved in or knew about the alleged fraudulent concealment of most of the lease" (Pludeman v Northern Leasing Sys., Inc., 40 AD3d 366, 367 [1st Dept 2007]). The court concluded that, given the procedural posture and unique facts alleged, CPLR 3016 (b) should not be read to require plaintiffs to "state the details of the individual defendants' personal participation in, or actual knowledge of, the alleged concealment, as those facts are peculiarly within their knowledge" (id. at 368 [internal quotation marks and citation omitted]).
Two Justices dissented and voted to grant defendants' motion to dismiss the cause of action for fraud as against the individual defendants. The dissenters reasoned that "no allegations [of fraud] were directed at any of the individual defendants" (id. at 371). They posited that given the absence of an allegation that the individual corporate defendants knew about the alleged fraudulent practices of the company's sales representatives, defendants' motion to dismiss pursuant to CPLR 3016 (b) should have been granted. The Appellate Division granted defendants leave to appeal, and we now affirm.
As relevant, CPLR 3016 (b) provides that where a cause of action or defense is based upon fraud, "the circumstances constituting the wrong shall be stated in detail." In such an action, "corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally" (Polonetsky v Better Homes Depot, 97 NY2d 46, 55 [2001]). The purpose of section 3016 (b)'s pleading requirement is to inform a defendant with respect to the incidents complained of. We have cautioned that section 3016 (b) should not be so strictly interpreted "as to prevent an otherwise valid cause of action in situations where it may be `impossible to state in detail the circumstances constituting a fraud'" (Lanzi v Brooks, 43 NY2d 778, 780 [1977], quoting Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194 [1968]). Thus, where concrete facts "are peculiarly within the knowledge of the party" charged with the fraud (Jered Contr. Corp., 22 NY2d at 194), it would work a potentially unnecessary *492 injustice to dismiss a case at an early stage where any pleading deficiency might be cured later in the proceedings (see CPC Intl. v McKesson Corp., 70 NY2d 268, 285-286 [1987]; Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92, 97-98 [1st Dept 2003]; see also Siegel, 2003 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3016:3, 2008 Pocket Part, at 17 ["Misrepresenters have not been known to keep elaborate diaries of their fraud for the use of the defrauded in court"]).
Critical to a fraud claim is that a complaint allege the basic facts to establish the elements of the cause of action. Although under section 3016 (b) the complaint must sufficiently detail the allegedly fraudulent conduct, that requirement should not be confused with unassailable proof of fraud. Necessarily, then, section 3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct (see Polonetsky, 97 NY2d at 55 [alleged facts sufficient to permit a jury to "infer (defendant's) knowledge of or participation in the fraudulent scheme"]; Jered, 22 NY2d at 194; Lanzi, 43 NY2d at 780).[3]
In Polenetsky, for example, the complaint alleged that Better Homes marketed substandard properties to potential buyers at inflated prices under the guise of foreclosures offered below market value. The complaint alleged that repairs would be made for observable defects, along with other false assurances, and that potential buyers were discouraged from consulting their own attorneys, and instead steered to attorneys with ties to Better Homes. Finally, the complaint alleged that Better Homes' president "participate[d] in [Better Homes'] operations on a day-to-day basis and [was] actively involved in its marketing and sales activities" (Polonetsky, 97 NY2d at 55). Taking the allegations in the light most favorable to the complainant, we concluded that, under the circumstances, sufficient facts were *493 alleged to permit a factfinder to infer that the individual defendant knew of or actually participated in Better Homes' alleged scheme to defraud its consumers (id.). Importantly, we noted that the inference was cognizable "given the degree of [the president's] personal activities [within the organization] and the nature and extent of the customers' dissatisfaction" (id.).
The facts of this case differ only in degree from Polonetsky. As alleged, the fraud in this case was not an isolated incident, but rather a nationwide scheme that took place over a number of years. The very nature of the scheme, as alleged, gives rise to the reasonable inferencerebuttable though it may later prove to bethat the officers, as individuals and in the key positions they held, knew of and/or were involved in the fraud (see Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92, 97-98 [1st Dept 2003]). Although plaintiffs have not alleged specific details of each individual defendant's conduct, we have never required talismanic, unbending allegations. Simply put, sometimes such facts are unavailable prior to discovery. Lest we willfully ignore the obviousor the strong suspicion of a fraudwe have always acknowledged that, in certain cases, less than plainly observable facts may be supplemented by the circumstances surrounding the alleged fraud (see Jered, 22 NY2d at 194; Polonetsky, 97 NY2d at 55; see also Board of Mgrs. of 411 E. 53rd St. Condominium v Dylan Carpet, 182 AD2d 551, 552 [1st Dept 1992]).
Here it is significant that plaintiffs, unrelated to one another, all registered parallel complaints. Moreover, it is the language, structure and format of the deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution that permits, at this early stage, an inference of fraud against the corporate officers in their individual capacity and not the sales agents.[4] Taken in the light most favorable to the nonmoving party, and according that party the benefit of every possible favorable inference, we determine only whether the facts as alleged are cognizable within the claim asserted to section 3016 (b)'s satisfaction (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]). We cannot say, as a matter of law, that a finder of fact could not reasonably infer the requisite knowledge or participation *494 by the individual defendants (see id.; see also Lanzi, 43 NY2d at 780; Jered, 22 NY2d at 194; Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 44 [1980]).
Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative.
SMITH, J. (dissenting).
I think the Appellate Division erred, and the majority errs, in upholding the complaint as against the individual defendants.

I
CPLR 3016 (b) says: "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." This rule has received surprisingly little attention from our Court. We have held that it does not require the impossible, recognizing that a plaintiff cannot be expected to plead details that are exclusively within the defendants' knowledge (Lanzi v Brooks, 43 NY2d 778, 780 [1977]; Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194 [1968]). We have said that the rule "requires only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of" (Lanzi, 43 NY2d at 780); but obviously, rule 3016 (b) must require more than the "notice pleading" that is required in every caseotherwise there would be no reason for it to exist. We have recognized that the rule serves to prevent "proliferating litigation of baseless claims" (Simcuski v Saeli, 44 NY2d 442, 453 [1978]), and we have held that merely "conclusory allegations" are insufficient to comply with it (Greschler v Greschler, 51 NY2d 368, 375 [1980]).
The similar provision of rule 9 (b) of the Federal Rules of Civil Procedure (which now reads "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake") has been much more extensively examined by the federal courts. While the federal decisions are not uniform, a long line of cases from the Court of Appeals for the Second Circuit recognizes that the rule serves not only to provide a defendant with fair notice, but also to guard against "improvident charges of wrongdoing" and "the institution of a strike suit" (Harsco Corp. v Segui, 91 F3d 337, 347 [2d Cir 1996], quoting Acito v IMCERA Group, Inc., 47 F3d 47, 52 [2d Cir 1995]). The Second Circuit rule is that a fraud complaint *495 must set forth "particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent" (Eternity Global Master Fund Ltd. v Morgan Guar. Trust Co. of N.Y., 375 F3d 168, 187 [2d Cir 2004], quoting Shields v Citytrust Bancorp, Inc., 25 F3d 1124, 1129 [2d Cir 1994]). These facts must be enough to support "a strong inference of fraud" (Shields, 25 F3d at 1128). This standard has been adopted by statute for federal securities fraud actions (15 USC § 78u-4 [b] [2] ["the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"]).
I believe the Second Circuit's "strong inference" rule is well suited to the purpose of weeding out speculative or spurious claims of fraud, and consistent with our cases interpreting CPLR 3016 (b). I would thus adopt this test as a matter of New York law. But the test I propose does not differ greatly, if it differs at all, from the "reasonable inference" rule stated in the majority opinion (majority op at 492). My main quarrel is with the majority's application of the test here.

II
The amended complaint alleges nothing more specific about the individual defendants than their corporate titlesand not all of these titles even suggest a connection with the sales and leasing functions of Northern Leasing Systems, Inc. (NLS), the corporate defendant. One individual defendant is alleged to be "Vice President and Chief Information Officer" of NLS; nothing more is said of his supposed connection to the alleged fraud. The majority relies not on allegations specific to the individual defendants, but on the description in the amended complaint (as supplemented by documentary evidence submitted on the motion to dismiss) of the alleged fraud by NLS. The majority finds this description sufficient to support a reasonable inference that the individual defendants participated in a fraud. I do not.
I accept the premise of plaintiffs, and the majority, that plaintiffs cannot be expected to allege in detail what each individual defendant did. Plaintiffs obviously do not know NLS's internal workings. Where a corporation has been involved in a repeated and significant pattern of fraudulent conduct, it may often be reasonable to infer "knowledge of or participation in the fraudulent scheme" by senior officials of the corporation (Polonetsky v Better Homes Depot, 97 NY2d 46, 55 [2001]), but *496 the strength of the inference will vary with the facts of each case. In this case, I do not see allegations sufficient to support an inference of fraudulent activity by NLS so frequent and so significant that the individual defendants must have had knowledge of it.
Plaintiffs complain that they were defrauded into leasing credit card terminals and other business equipment. Specifically, they claim that they were tricked into signing what they thought was a one-page lease agreement; that the agreement turned out to be four pages; and that some of the terms on pages two through four were onerous. But the salespeople who presented the agreement to plaintiffs for signature were not NLS employees. NLS is not an equipment distributor. It is, in substance, a lender of money, though in form it is a lessor. It advances funds to distributors of equipment, takes title to the equipment and gets its money back, with a profit economically equivalent to interest, in the form of rental payments from merchants like plaintiffs, who are the distributor's customers and NLS's lessees. It is the distributor, through its sales representatives, who deals with plaintiffs and other customers and supplies the equipment to them. There is no allegation in this case that NLS (much less any of the individual defendants) had any communications at all with the sales representatives.
Since there is no basis for thinking that NLS supervised or instructed the salespeople, I do not see how it, or a fortiori its officers, can be blamed for any trickery in which the salespeople engaged. The only alleged act of NLS's officers or employees that had a connection with the alleged fraud is the creation of the four-page agreement itself, a document that was before the motion court. If this agreement were evidently designed to mislead the lesseesif it were a four-page agreement cleverly disguised as a one-page agreementI might well vote to uphold the complaint, not just against NLS but against the officers also, for such a ruse could hardly be practiced without the officers' knowledge. But this agreement does not look to me like something that is designed to deceive.
NLS's form agreement[*] is a printed booklet. It would be hard to pick it up without realizing that it is a booklet, not a single page. The front page identifies NLS and the equipment supplier, *497 and contains blanks for filling in basic information about the leasethe identity of the lessee, the nature of the equipment, a payment schedule (monthly payments range from $36 to $100) and some other details. It contains two blanks for signatures of a lessee representative, one of them a clearly labeled personal guaranty. The inside pages contain 24 paragraphs of boilerplate terms. At the bottom of the first page, inches from the blanks for the lessee's and personal guarantor's signatures, appears in small but perfectly legible print: "Page 1 of 4"an extraordinary thing for NLS to put on its lease, if it wanted to make the lessees think there were no more pages. Nor would NLS, if it wanted to conceal the full text of the lease, post prominently on its Web site a toll-free phone number from which a copy could be obtained.
It seems to me that plaintiffs', and the majority's, real objection to the inside pages of this lease is not that the pages were concealed, but that the terms they contain are unduly harsh. The insurance clause in plaintiff Hanzsek's lease, for example, provides that the lessee must either keep the equipment insured or pay an additional $2.95 per month for a "Loss & Destruction waiver." This, and perhaps some other features of the lease, are arguably overreachingand if they are unconscionable, they are unenforceable (see Wilson Trading Corp. v David Ferguson, Ltd., 23 NY2d 398, 403-404 [1968]). But unconscionability is something different from fraud.
It is entirely possible that plaintiffs and other lessees did not understand, when they signed the lease, the implications of the insurance or many of the other boilerplate clauses. But this is a result not of fraud, but of a fact of life: Most people entering into relatively small transactions do not read the agreements they sign with any care, if they read them at all. Anyone who has ever rented a car knows that. I have little doubt that NLS could have printed in bright red capital letters, at the top of page one: "THIS IS A FOUR PAGE LEASE"and still few if any lessees would have read or understood the insurance clause. The approach taken by plaintiffs, and accepted by the majoritytranslating what may be a good unconscionability claim into a fanciful claim that three pages of the lease were fraudulently concealedvirtually invites NLS, and future parties similarly situated, to immunize themselves from lawsuits with this sort of disclosure.
I would hold that plaintiffs have failed to state in detail facts constituting a fraud by the individual defendants, as CPLR *498 3016 (b) requires, and would dismiss the complaint as to those defendants.
Order, insofar as appealed from, affirmed, etc.
NOTES
[1] NLS, a New York corporation in the business of micro-ticket leasing, finances credit card point-of-sale (POS) terminals and other business equipment. Specifically, NLS, as lessor, enters into finance lease agreements with small businesses (lessees) for certain equipment. Under the terms of these leases, NLS purchases the equipment from third-party vendors solely for the purpose of leasing it.
[2] One plaintiff claims that the copy she signed did not contain this notation at all.
[3] We undoubtedly agree with the dissent's observation that section 3016 (b) "must require more than the `notice pleading'" applicable in other cases (dissenting op at 494). However, what is critical in this case for section 3016 (b) purposes is that the facts as allegedcircumstantial though they may beare enough, we believe, to permit an inference that satisfies the purposes of the CPLR. The dissent would dismiss this case because the allegations of fraud were not directly lodged against certain individual defendants. We respectfully suggest, however, that the indirect circumstantial inference of a corporate individual's allegedly fraudulent conduct and the direct naming of such individual with regard to the same conduct alleged, under the circumstances, is a distinction without much of a difference.
[4] As noted, it is curious that each complainant was presented with the lease form in a similar manner. While defendants assert, and plaintiffs do not dispute, that the salespersons were not employees of NLS, the same fashion by which prospective lessees were presented with the lease adds credence to plaintiffs' allegations of fraud emanating from NLS's top management.
[*] It seems that NLS changed its form from time to time, but no party argues that the changes should alter the result. Where there are variations, my description is of the agreement between NLS and plaintiff Chris Hanzsek.