■ DONALDO NICOSIA, Appellant, v THE BOARD OF MANAGERS OF THE WEBER HOUSE CONDOMINIUM et al., Respondents, et al., Defendant. [909 NYS2d 412]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered September 22, 2008, that granted the motions of defendants Board of Managers of the Weber House Condominium, KESY LLC and Kevin MacCarthy to dismiss the complaint and to cancel the notice of pendency plaintiff filed against the property, modified, on the law, to reinstate the second cause of action (in part) and fifth cause of action, and otherwise affirmed, without costs.

The court based its grant of defendants' motions to dismiss on its finding that plaintiff had waived his right to bring any claims arising out of his contract with defendant Axminster to purchase the condominium unit. In doing so, the court improperly made a factual determination that defendant Board's exercise of its right of first refusal was valid (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Accordingly, we modify to reinstate those claims that we find to be viable, namely, that part of the second cause of action for tortious interference with contract and the fifth cause of action for breach of contract against Axminster.

Plaintiff states a cause of action for tortious interference with a contract against defendants Board of Managers, KESY and MacCarthy by alleging that he had a contractual relationship with Axminster, that KESY, the Board and MacCarthy had knowledge of the contract, and that MacCarthy, the Board and

KESY intentionally interfered with that contract "by improperly purporting to exercise a right of first refusal," causing plaintiff financial damages (*see NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996]; *cf. 85 Fifth Ave. 4th Floor, LLC v I.A. Selig, LLC*, 45 AD3d 349 [2007]).

The fifth cause of action, for breach of contract against Axminster only, should be reinstated because Axminster did not move to dismiss, but instead answered the complaint and asserted affirmative defenses. For unstated reasons, the motion court dismissed the complaint in its entirety.

Plaintiff's remaining claims should be dismissed as either duplicative (*see Turk v Angel*, 293 AD2d 284 [2002], *lv denied* 100 NY2d 510 [2003]), unnecessary (*see Bartley v Walentas*, 78 AD2d 310, 312 [1980]) or insufficient to state a cause of action (*see MBF Clearing Corp. v Shine*, 212 AD2d 478, 479 [1995]).

Plaintiff's fraud claim should be dismissed for the additional reason that it is not pleaded with particularity (CPLR 3016 [b]). A cause of action for fraud requires plaintiff to plead: (1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance and (5) damages (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). Plaintiff's complaint is bare-bones. Among other deficiencies, plaintiff does not allege how he learned that the Board was purporting to exercise its right of first refusal. Plaintiff attaches an August 6, 2007 letter that the Board sent to Axminster's attorney stating that the Board was electing to exercise its right of first refusal. However, plaintiff does not articulate who communicated this information to him or when he received this information. Thus, we are left to guess that somehow Axminster's attorney communicated the Board's decision to plaintiff at some point. Plaintiff also does not explain how he relied to his detriment on the Board's alleged exercise of its right of first refusal. While we can suppose that plaintiff's reliance somehow involved his refraining from taking steps to enforce the closing, it is not for us to interject our supposition into plaintiff's pleading. Nor is it our place to explain what damages might have flowed from the failure to close. The dissent points to allegations from the tortious interference cause of action where plaintiff alleges that because of defendants' wrongful conduct, "plaintiff's contract with Axminster to purchase the Unit was not consummated." However, this language does not appear in plaintiff's cause of action for fraud. And, even if it did, this language would hardly satisfy the CPLR 3016 (b) requirement that the facts constituting the fraud "be stated in detail." Certainly, what plaintiff did or did not do after learning

that the Board was exercising its right of first refusal, and what damages flowed from that action or inaction, are within plaintiff's purview.

While the dissent may be correct that plaintiff can prevail on his fraud claim "if Axminster reasonably relied on the misrepresentation in selling the unit to KESY," plaintiff has not alleged this. Rather, plaintiff's allegations concerning Axminster are more nefarious—that Axminster directly breached its duties to plaintiff by failing to perform "its required due diligence to determine if the sale to KESY was in accordance with the Bylaws."

Thus, the facts of this case could very well eventually support a fraud claim. However, plaintiff has not pleaded these facts sufficiently and, unlike the dissent, we decline to speculate and infer the facts for him, especially given our liberal rules regarding amendment of pleadings.

That part of plaintiff's second cause of action for tortious interference with prospective advantage was properly dismissed. Because plaintiff and Axminster had already entered into a contract, plaintiff failed to plead any prospective business relationship. We cannot see how plaintiff would have any relationship with Axminster, separate from the contract, upon which to recover. Moreover, because the fraud claim is not viable in its present form, plaintiff has failed to plead conduct "amount[ing] to a crime or an independent tort" or conduct the sole purpose of which was to inflict intentional harm on plaintiff, sufficient to support this cause of action (see Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]). Concur—Friedman, J.P., Moskowitz, DeGrasse, JJ.

McGuire and Acosta, JJ., dissent in a memorandum by McGuire, J., as follows: I disagree with the majority's determination to uphold the dismissal of the fraud cause of action as against defendants KESY LLC and Kevin MacCarthy and the cause of action for tortious interference with prospective advantage.

We must assume the following to be true: Plaintiff entered into a contract with defendant Axminster to purchase a commercial condominium unit. The contract was subject to and conditioned upon the waiver of a right of first refusal to purchase the unit held by the condominium and exercisable by defendant Board of Managers. The condominium's bylaws provide that within 30 days of receipt of notice from a unit owner of a bona fide offer to purchase the unit, the Board "may elect, by notice to such unit owner, to purchaser [sic] such unit . . . (or to cause the same to be purchased by its designee,

corporate or otherwise), on behalf of all other unit owners, on the same terms and conditions as contained in the Outside Offer and as stated in the notice from the offering unit owner." In a letter dated August 6, 2007, defendant MacCarthy, purporting to act in his capacity as the Board's president, falsely represented to Axminster's attorney that the Board properly had elected to exercise its right of first refusal and purchase the unit. In fact, according to the complaint, MacCarthy had "fraudulently concocted a scheme whereby KESY, an entity he controlled, would purchase the Unit." Thereafter, the complaint alleges, "MacCarthy directed the sale of the Unit to KESY on or about September 14, 2007, in violation of the By-laws."

The majority writes that "[p]laintiff's complaint is bare-bones." Whether this characterization is accurate is irrelevant, because the question is whether the allegations regarding fraud pass muster with respect to KESY and MacCarthy. The majority identifies as a "deficienc[y]" that "plaintiff does not allege how he learned that the Board was purporting to exercise its right of first refusal." The majority goes on to note that the August 6, 2007 letter was "sent to Axminster's attorney," and that "plaintiff does not articulate who communicated this information to him or when he received this information," relying on plaintiff's failure to assert that this information was communicated to him as a basis for its affirmance of the dismissal of the claim.

The majority is unpersuasive to the extent it takes the position that the fraud claim is deficient because it fails to allege that KESY or MacCarthy made the false representation. Fairly read, plaintiff alleges that MacCarthy was the architect of a fraudulent scheme pursuant to which he used his position as president of the Board to arrogate to himself for his sole benefit, through KESY, the right of first refusal that properly could be exercised only by the Board for the benefit of all the shareholders. Pursuant to this scheme, the complaint also alleges that MacCarthy wrote and sent to Axminster's attorney the August 6, 2007 letter falsely asserting that the right of first refusal had been exercised by the Board on behalf of all the shareholders. As the Court of Appeals stated in the course of holding that allegations of fraud were sufficiently pleaded, "[t]he very nature of the scheme, as alleged, gives rise to the reasonable inference . . . that the [defendant] officers, as individuals and in the key positions they held, knew of and/or were involved in the fraud" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 493 [2008]).

Although inartfully pleaded, plaintiff's complaint alleges a

scheme to defraud him out of the property he contracted to purchase and it is clear from the complaint and the attached August 6 letter that the misrepresentation was conveyed to him. It would not matter at all if the misrepresentation was made by defendants to Axminster and not to plaintiff (*see Tindle v Birkett*, 171 NY 520, 524 [1902] [upholding fraud claim; "(d)isregarding mere forms and methods, it cannot be doubted that the defendant spoke false and deceitful words to the plaintiffs through (a third party) just as effectually as if they had met face to face and the statements had been made directly and personally"]).

The majority writes that plaintiff "does not explain how he relied to his detriment on the Board's alleged exercise of its right of first refusal." But the want of such an explanation in his complaint hardly is fatal to plaintiff's fraud claim. Not surprisingly, the majority cites nothing in support of the notion that fraud complaints must contain explanations. The statutory requirement that "the circumstances constituting the wrong shall be stated in detail" (CPLR 3016 [b]) "should not be confused with unassailable proof of fraud"; "section 3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct" (*see also Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]).

The inference that plaintiff relied—whether he did so reasonably is not in dispute—on the fraudulent representation to his detriment is a reasonable one to which he is entitled. After all, the complaint alleges that because of the wrongful conduct of MacCarthy and KESY, "plaintiff's contract . . . to purchase the Unit was not consummated and as a result plaintiff has sustained financial harm . . . and damages." Of course, a fraud plaintiff can show that he or she acted or refrained from acting to his detriment (*Shea v Hambros PLC*, 244 AD2d 39, 46-47 [1998]), and it is reasonable to infer from the complaint that plaintiff did not take steps to enforce his valuable contractual rights because he credited MacCarthy's representation that the Board properly had exercised its right of first refusal.

Moreover, it also is reasonable to infer from plaintiff's allegations against Axminster that Axminster sold the unit to KESY because it, too, credited that representation. Thus, plaintiff alleges that Axminster breached the contract in selling the unit to KESY "by failing to do its due diligence with respect to the purported exercise of the . . . right of first refusal." That inference also defeats the majority's position, because plaintiff can prevail on his fraud claim if Axminster reasonably relied on the misrepresentation in selling the unit to KESY (*see Rice v Man-*

*ley*, 66 NY 82, 87 [1876] ["it matters not whether the false representations be made to the party injured or to a third party, whose conduct is thus influenced to produce the injury"]; *see also Ruffing v Union Carbide Corp.*, 308 AD2d 526, 528-529 [2003], *appeal dismissed* 1 NY3d 621 [2004]).

The majority also writes that "we are left to *guess* that *somehow* Axminster's attorney communicated the Board's decision to plaintiff at some point" (emphasis added). To be blunt, this is just silly. Even putting aside what, as noted below, transpired at oral argument, no reasonable person could fail to draw the inference from the complaint's factual allegations that that is exactly what happened. Nor would any reasonable person think that communicating the decision—ostensibly that of the Board—might be at all difficult, even if it were necessary to allege how it was communicated. This statement by the majority is of a piece with the rest of its discussion of the fraud allegations. Rather than do what it must (if it seeks to persuade) and explain why the inferences I draw are not reasonable, the majority offers only conclusory characterizations ("guess," "supposition" and "speculate").

The majority argues that plaintiff's allegations that he was damaged are insufficient. It first stresses that I "point[ ] to allegations from the tortious interference cause of action where plaintiff alleges that because of defendants' wrongful conduct, 'plaintiff's contract with Axminster to purchase the Unit was not consummated.' " Permitting form to vanquish substance, the majority then objects that "this language does not appear in plaintiff's cause of action for fraud." Of course, however, on a CPLR 3211 motion, precisely where a factual allegation appears in a complaint is irrelevant (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977] ["the sole criterion is whether the pleading states a cause of action, and if from its *four corners* factual allegations are discerned which taken together manifest any cause of action . . . a motion for dismissal will fail" (emphasis added)]).

The majority next objects that even if this language did appear in the paragraphs of the complaint explicitly devoted to the fraud cause of action, it "would hardly satisfy the CPLR 3016 (b) requirement that the facts constituting the fraud 'be stated in detail.' " This language, however, relates not to the fraudulent conduct but to plaintiff's damages and there is no requirement that the damages be pleaded with specificity. Rather, "[t]his provision requires only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of" (*Lanzi v Brooks*,

43 NY2d 778, 780 [1977]). In any event, the majority is content with this sweeping assertion and identifies no specific respect in which the language is deficient. Again, moreover, the majority wrongly requires what amounts to "unassailable proof of fraud" (*Pludeman,* 10 NY3d at 492).

The majority is correct that "what plaintiff did or did not do after learning that the Board was exercising its right of first refusal, and what damages flowed from that action or inaction, are within plaintiff's purview." But if, as I contend, the factual allegations plaintiff does make and the reasonable inferences that can be drawn from them are sufficient to pass muster under CPLR 3016 (b), the complaint is not defective because plaintiff could have pleaded more.

The majority does not disagree with me that plaintiff can prevail on his fraud claim if Axminster reasonably relied on the misrepresentation in selling the unit to KESY. Instead, the majority protests that "plaintiff has not alleged this." Of course, however, I expressly acknowledged that. My point, with which the majority does not come to grips, is that it is reasonable to infer that reliance by Axminster from a specific allegation of the complaint. The majority's characterization of that allegation as "nefarious" is as colorful as it is irrelevant. In any event, if I am correct that reliance by plaintiff reasonably can be inferred from the allegations of the complaint, it does not matter whether I also am correct that reliance by Axminster can be inferred.*

One of the two reasons proffered by the majority for upholding the dismissal of the claim for tortious interference with prospective advantage is that "[b]ecause plaintiff and defendant Axminster had already entered into a contract, plaintiff failed to plead any prospective business relationship." The majority cites no authority in support of its position, and does not seek to reconcile it with the precept that causes of action can be

---

* Tellingly, at oral argument on the motion to dismiss, the defendants charged with fraud never so much as mentioned the subject of the adequacy of the complaint's allegations of reliance. The colloquy, however, makes clear that plaintiff's position is that he accepted the return of the down payment made to Axminster precisely because he believed the representation that the right of first refusal had been properly exercised. In addition, making clear that Axminster also relied on that representation, counsel for Axminster stated that plaintiff "accepted the $220,000 down-payment . . . [e]verything *seemed fine,* then we went to a closing, we transferred to KESY" (emphasis added). Accordingly, as plaintiff's ability to plead reliance cannot be doubted, it is not clear that the fraud cause of action should be dismissed even if the inference of reliance could not reasonably be drawn from the complaint (*cf. Nonnon v City of New York,* 9 NY3d 825, 827 [2007] [on a CPLR 3211 motion to dismiss, affidavits may be used to remedy pleading defects]).

pleaded in the alternative (*George Cohen Agency v Donald S. Perlman Agency*, 51 NY2d 358, 366 [1980]). Rather, it apparently assumes that the existence of a valid contract, something else the majority simply assumes, precludes a claim for tortious interference with prospective advantage. In other words, for some reason a plaintiff who pleads a breach of contract claim cannot also plead a claim for tortious interference with prospective advantage whenever the prospective advantage and the object of the contract are one and the same.

Why the majority singles out the latter rather than the former claim for dismissal is not clear. In any event, the fundamental problem with the majority's approach is that it implicitly and erroneously assumes that plaintiff can *prove* both the existence of a valid contract with Axminster and the breach of that contract. As noted above, the theory advanced by plaintiff in his complaint is that Axminster breached the contract by selling the unit to KESY "by failing to do its due diligence with respect to the purported exercise of the . . . right of first refusal." We need not decide the point, but it is not obvious that Axminster breached the contract if it believed or reasonably believed that the right of first refusal had been properly exercised by the Board. If Axminster did not breach the contract, there is no reason—the majority does not suggest one—why plaintiff should be precluded from seeking to prove that MacCarthy and KESY tortiously interfered with a prospective business relationship pursuant to which Axminster would sell the unit to him. Finally, on this point, I note the quandary into which the majority would put a plaintiff who is unsure whether it can prove that a valid contract was breached. If the plaintiff can prove that a third party tortiously interfered with its prospective economic relationship with the contractual counterparty, the majority's approach forces the plaintiff to elect between suing the contractual counterparty and the tortfeasor. For no good reason, one of them must escape liability.

The majority has nothing at all to say in response to any of my arguments that it is wrong to uphold the dismissal of the claim for tortious interference with prospective advantage on the ground that "plaintiff and Axminster had already entered into a contract." The majority's silence, I think, does not reflect timorous diffidence. In its failure to provide any explanation of, or even to cite a single precedent ostensibly supporting its position, the majority's writing has more in common with a diktat than a judicial opinion.

The second of the two reasons proffered by the majority is that "plaintiff has failed to plead conduct amount[ing] to a

crime or an independent tort or conduct the sole purpose of which was to inflict intentional harm . . . to support this cause of action" (internal quotation marks omitted). The majority's premise, that plaintiff must plead and prove an independent tort (if it does not plead conduct that is criminal or intended solely to inflict harm), is incorrect (*see Carvel Corp. v Noonan*, 3 NY3d 182, 190-191 [2004] [expressly leaving open the question of whether conduct, "though not a crime or tort in itself, (is) so 'culpable( )' . . . that it could be the basis for a claim of tortious interference with economic relations"]). In any event, for the reasons stated above, I think plaintiff has pleaded conduct amounting to the independent tort of fraud.

With regard to the cause of action for breach of contract asserted only against Axminster, a nonmoving defendant, it is not clear that the court intended to dismiss this claim. The order appealed from does not mention Axminster nor does it state that it is dismissing the cause of action for breach of contract. To the extent that the complaint may have erroneously been dismissed in its entirety, this cause of action should be reinstated.