DDJ MANAGEMENT, LLC, et al., Respondents, v RHONE GROUP L.L.C. et al., Appellants, et al., Defendants. [911 NYS2d 7]—

Upon remittitur from the Court of Appeals (15 NY3d 147 [2010]) for consideration of issues raised but not determined in this Court, order, Supreme Court, New York County (Helen E. Freedman, J.), entered April 28, 2008, which denied the motions of defendants-appellants to dismiss plaintiffs' fraud cause of action, unanimously affirmed, with costs.

The prior decision of this Court (60 AD3d 421 [2009]), having dismissed the fraud claim on the ground of lack of reasonable reliance by plaintiffs, did not address the alternative argument by corporate and individual defendants, those other than PricewaterhouseCoopers (PwC), that plaintiffs failed to otherwise sufficiently plead the elements of fraud, particularly scienter. We now address that issue. As the dismissal of the claims against PwC was affirmed in the prior decision of this Court, and not addressed by the Court of Appeals, that determination is unaffected.

It is alleged that plaintiffs loaned the now-defunct American

Remanufacturers Holdings, Inc. (ARI) some $40 million based on the representations made in ARI's 2003 and 2004 financial statements. It is alleged, essentially, that ARI and the remaining defendants concealed from plaintiffs the fact that between 2003 and 2004, defendants had changed the manner in which ARI took reserves on unsold items, taking such reserves only for items unsold for two years, instead of one year as previously done. This resulted in the appearance of a dramatic increase in ARI's earnings before interest, taxes, depreciation and amortization between 2003 and 2004. We now hold that the motion court properly denied defendants' motion to dismiss the fraud claim, as the allegations sufficiently plead such claim.

CPLR 3016 (b) "imposes a more stringent standard of pleading than the generally applicable notice of the transaction rule of CPLR 3013" (*Edison Stone Corp. v 42nd St. Dev. Corp.*, 145 AD2d 249, 257 [1989] [internal quotation marks omitted]). Moreover, where allegations of fraud are based on information and belief, the source of such information must be revealed (*see Kanbar v Aronow*, 260 AD2d 182 [1999]; *Wall St. Transcript Corp. v Ziff Communications Co.*, 225 AD2d 322 [1996]; *Belco Petroleum Corp. v AIG Oil Rig*, 164 AD2d 583, 598-599 [1991]). However, at this early stage of the litigation, plaintiffs are entitled to the most favorable inferences, including inferences arising from the positions and responsibilities of defendants (*see Pludeman v Northern Leasing Sys., Inc.*, 40 AD3d 366, 367-368 [2007], *affd* 10 NY3d 486 [2008]), and plaintiffs need only set forth sufficient information to apprise defendants of the alleged wrongs (*see Bernstein v Kelso & Co.*, 231 AD2d 314, 320-321 [1997]). Moreover, the pleading requirements should not be narrowly construed, and a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the prediscovery stage, so long as such intent may be inferred from the surrounding circumstances (*see Oster v Kirschner*, 77 AD3d 51 [2010]).

As an initial matter, we reject the argument that, at most, the complaint alleges that Quilvest America, not all Quilvest entities, elected defendants deVogel and Uhrig to the ARI board of directors. Quilvest also asserts, in a footnote, that, while Three Cities Holdings Limited (now named Quilvest Services Ltd.) is a Quilvest entity, Scott Duncan was an employee of Three Cities Research, Inc., which is not a Quilvest entity. Moreover, the reference to the management agreement in the 2003 audited financial statement refers to a fee paid to defendant Rhone and Three Cities Research, not Three Cities Holdings. Nevertheless, for the proposition that defendant Duncan is not an employee of

Quilvest, Quilvest cites Duncan's affidavit, in which he states only "I never expected that my involvement with Three Cities Research, Inc. would subject me to suit as an individual in New York State" (Duncan is an Illinois resident). This is not a statement that he does not work for Three Cities Holdings or Quilvest. Furthermore, Quilvest does not cite any authoritative documentation which affirmatively dissociates it from either Duncan or Quilvest American.

The complaint also describes the "ARI Control Defendants" as the Rhone defendants and the "Quilvest/Three Cities" defendants, and describes deVogel and Uhrig as agents of both Quilvest America and "Quilvest." It further describes Three Cities Holdings, which is controlled and directed by "Quilvest," as controlling and directing the business of Three Cities Research, Inc. Given these allegations, and nothing definitive to negate them, Quilvest cannot dissociate itself from Quilvest America, Three Cities Research or Scott Duncan for purposes of these pleadings.

Plaintiffs have also sufficiently alleged fraud against the individual and corporate defendants, based, in part, on the corporate positions and titles of the individual defendants with ARI and/or with the corporate defendants (*see Oster v Kirschner, supra*; *Houbigant, Inc. v Deloitte & Touche*, 303 AD2d 92, 98 [2003] [complaint only needs to demonstrate some "rational basis" to infer that alleged misrepresentation was knowingly made]; *JP Morgan Chase Bank v Winnick*, 350 F Supp 2d 393, 400 [SD NY 2004] ["At the pleading stage, it is appropriate to allow the plaintiffs' claims to proceed against these defendants on the assumption that persons occupying such positions in the company would have knowledge of both the fraud and the substantive terms of the Credit Agreement when they signed the borrowing requests"]; *Pludeman*, 40 AD3d at 367 ["At this early juncture, according plaintiffs' complaint the most favorable inferences, one can readily deduce, given the corporate positions and titles of the individual defendants, that these individuals actually operate the day-to-day business of corporate defendant, and consequently were involved in or knew about the alleged fraudulent concealment"]), also raising a reasonable inference that they acted on behalf of their corporate employers, the owners, shareholders and managers of ARI (*see Osipoff v City of New York*, 286 NY 422, 428 [1941] ["a corporation is liable, as an individual, for tort committed by its servants or agents acting within the scope of their service or agency"]). These inferences are supported by the surrounding circumstances, as well as numerous e-mails tending to establish the individual defend-

ants' knowledge of the alleged misrepresentations, coupled with their superior knowledge from which it may reasonably be inferred that a duty to speak arose on the part of defendants (*see Williams v Sidley Austin Brown & Wood, L.L.P.*, 38 AD3d 219 [2007]; *Kaufman v Cohen*, 307 AD2d 113, 126 [2003]; *P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 378 [2003]). Concur—Mazzarelli, J.P., Saxe, Friedman, Acosta and DeGrasse, JJ.