**SEA TOW INTERNATIONAL, INC., Plaintiff,**

v.

**Duke PONTIN, individually, and Duke Pontin d/b/a/ Spirit Towing d/b/a/ Sea Tow Services Florida Keys, Defendants.**

**No. CV–06–3461 (SJF)(ETB).**

United States District Court, E.D. New York.

Nov. 9, 2007.

Stein Law, P.C., By: Mitchell A. Stein, Esq., Northport, NY, for Plaintiff.

Robertson, Freilich, Bruno & Cohen, LLC, By: Michael S. Weinstein, Esq., Newark, NJ, for Defendants.

## MEMORANDUM OPINION AND ORDER

E. THOMAS BOYLE, United States Magistrate Judge.

Before the court is the application of the plaintiff, Sea Tow International, Inc. ("Sea Tow" or "plaintiff"), to quash the subpoena of plaintiff's attorney, Mitchell A. Stein ("Stein"). In support of its motion, plaintiff asserts that defendants, Duke Pontin ("Pontin") and Duke Pontin d/b/a Spirit Towing d/b/a Sea Tow Services Florida Keys (collectively referred to as "Pontin" or "defendants"), are seeking information that is protected by the attorney-client privilege, as well as attorney work product, and that defendants have failed to attempt to first obtain the information they seek through other sources. Defendants assert that Stein is a "necessary witness" because he possesses personal knowledge that is critical to the defenses proffered by defendants in the within action, as well as defendants' counterclaim. For the following reasons, plaintiff's motion to quash the subpoena of Stein is granted.

### FACTS

This is an action for, *inter alia,* trademark infringement and breach of contract arising out of the termination by plaintiff of defendants' license to operate using plaintiff's "Sea Tow trademarks" and defendants' alleged failure to comply with certain contractual post-termination requirements of the licensing agreement entered into by plaintiff and defendants (the "Licensing Agreement"). (Compl.¶ 1.) In their Amended Answer, defendants assert a counterclaim against plaintiff for breach of contract. A related proceeding is currently pending in Florida state court. *See Pontin v. Sea Tow Servs. Int'l, Inc.,* No. 44–2001–CA–111–K (Fla. Monroe County Ct.) (the "Florida Action").[1]

Defendants seek to depose plaintiff's attorney, Stein, as well as review certain documents in his possession relating to plaintiff. Defendants assert that Stein has personal knowledge pertaining to plaintiff such that deposing him is necessary to their defense of the within action, as well as the prosecution of their counterclaim. Plaintiff moves to quash defendants' subpoena of its attorney's deposition and documents, arguing that Stein does not possess any knowledge beyond what he has learned in the scope of his representation of plaintiff and that any information defendants seek is available through other, less intrusive, sources. Oral argument on this motion was held by the undersigned on October 10, 2007.

### DISCUSSION

I. *Legal Standard*

■ The Federal Rules of Civil Procedure provide that a party may obtain discovery

---

1. In the Florida Action, which was initiated by Pontin in 2001, defendants allege causes of action for breach of contract, fraud, conspiracy to commit fraud, deceptive and unfair trade practices, tortious interference with contractual relations and breach of fiduciary duty, arising out of the same Licensing Agreement at issue herein. *See Sea Tow Servs. Int'l, Inc. v. Pontin,* 472 F.Supp.2d 349, 356 (E.D.N.Y.2007). On August 26, 2006, after the commencement of the within action, defendants sought and obtained a temporary injunction against plaintiff from the Florida court, which nullified the Notice of Termination of the Licensing Agreement issued by plaintiff to defendants on June 24, 2006. *See id.* The court was advised that this issue is presently on appeal in the Florida state courts.

"regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). However, a district court may limit

> [t]he frequency or extent of use of the discovery methods ... if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit....

Fed.R.Civ.P. 26(b)(2)(C). A court may also limit discovery "for good cause shown" and "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "that the ... discovery not be had." Fed.R.Civ.P. 26(c)(1). Specifically, with respect to subpoenas, pursuant to Federal Rule of Civil Procedure 45, the court may "quash or modify [a] subpoena if it ... (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iii) and (iv). "The burden of persuasion in a motion to quash a subpoena ... is borne by the movant." *Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (S.D.N.Y.2003) (citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992)).

■ In the Second Circuit, "depositions of opposing counsel are disfavored." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir.1991). "The rationale behind the presumption against such discovery is that 'even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation.'" *Yash Raj Films (USA) v. Kumar*, No. 05–CV–3811, 2007 WL 3124557, at *4, 2007 U.S. Dist. LEXIS 79344, at * 11 (E.D.N.Y. Oct. 25, 2007) (quoting

*Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F.Supp.2d 340, 342 (S.D.N.Y.2002) (internal quotation marks and citation omitted)). However, depositions of opposing counsel are not categorically prohibited. "Rather, the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001).

In determining whether a deposition of opposing counsel is appropriate in a given case, district courts in New York are generally guided by *dicta*[2] contained in the Second Circuit's opinion in *In re Friedman*, 350 F.3d 65 (2d Cir.2003). In *Friedman*, the Second Circuit wrote to disclaim any adoption of the position set forth by the Eighth Circuit in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986), which held that parties seeking to depose "opposing trial counsel" must demonstrate that "(1) no other means exist to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *See Friedman*, 350 F.3d at 71 ("[W]e have never adopted the *Shelton* rule and have stated specifically that the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature."). Referring to the *Shelton* rule as "rigid," *Friedman*, 350 F.3d at 67, the Second Circuit stated that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Id.* at 72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litiga-

---

**2.** In *Friedman*, the attorney who was subpoenaed agreed to be deposed prior to the issuance of the Second Circuit's opinion in the matter. *See Friedman*, 350 F.3d at 72. As a result, the appeal was dismissed as moot and the discussion on the merits is therefore *dicta*. *See id.* at 72 n. 4.

tion, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* According to the Second Circuit, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition ... but it is a circumstance to be considered." *Id.*

It is within the framework set forth in *Friedman* that the court addresses the within motion.

## II. *Stein's Testimony*

### A. *Defendants' Need to Depose Stein*

■ The first factor to be considered is the necessity of deposing opposing counsel. Defendants assert that Stein's position as plaintiff's attorney for more than twenty years has provided Stein with knowledge of Sea Tow's "overall business issues and operations, general concerns and challenges, contract formulation and goals, franchise expectations, finances, trademark and copyright protections, and ... alleged violations of Sea Tow contracts" all of which, defendants maintain, is "highly pertinent in this litigation and crucial to the defenses cited by Defendants as part of their Answer and Counterclaim." (Def. Mem. of Law in Opp'n to Pl. Mot. to Quash ("Def.Mem."), 4.) Defendants also contend that Stein's testimony in the Florida Action demonstrates that he has "personal knowledge" of the Licensing Agreement and the alleged violations of it by defendants that are at issue in this litigation. (*Id.*, 4, 6.) According to defendants, Stein "opined about the legitimacy of [plaintiff's] Federal trademark's status and viability" in the Florida action, which is an issue that is "centrally placed at the heart of Sea Tow's Complaint in this litigation," therefore making Stein a necessary witness. (*Id.*, 7.)

In support of their arguments, defendants offer the declaration of Duke Pontin. Mr. Pontin states in his declaration that on "multiple occasions" over the past fifteen years, he has "spoken personally" with Stein and that such conversations have gone "well beyond simple legal advice ... insofar as Stein provided [Pontin] with his personal knowledge, insight and perspective on various sub-ject matters involving [Pontin's] business and Sea Tow...." (Decl. of Duke Pontin ("Pontin Decl."), dated June 26, 2007, ¶ 4, annexed as Ex. C to Affirmation of Michael S. Weinstein ("Weinstein Aff."), dated Sept. 7, 2007.) Pontin further states that "Stein possesses substantial personal knowledge about [Pontin's] business, including many of the very issues at the heart of the Florida and New York litigation." (Pontin Decl., ¶ 7.)

Conversely, plaintiff asserts, and Stein represented at oral argument, that Stein has no personal knowledge of Sea Tow's business operations other than what he has learned in his capacity as counsel to Sea Tow, all of which is protected by attorney-client privilege. Moreover, Stein explicitly testified in the Florida Action that he has no personal knowledge with respect to Pontin's business. (Tr. of Proceedings in *Pontin v. Sea Tow Servs. Int'l, Inc.*, No. 44–2007–CA1111–K (Fla. Monroe County Ct.), dated Sept. 20, 2006, 68, annexed as Ex. A to Weinstein Aff. (hereinafter "Fl. Tr. I").) The only aspect of Stein's testimony in the Florida Action that could possibly be construed as reflecting personal knowledge with respect to Pontin's business concerns an email that Stein identified as a communication from the United States Coast Guard to Sea Tow's Chief Executive Officer ("CEO"), Joseph Frohnhoefer, in which the Coast Guard informed Sea Tow that Pontin's captain's license had expired. (Fl. Tr. I, 43–47.) Stein testified that he was present when the email was received and engaged in a subsequent conversation with the Coast Guard concerning Pontin's captain's license. (*Id.*, 47.) However, although this could loosely be construed as personal knowledge on Stein's part, it is personal knowledge concerning a matter that defendants could very easily obtain from Pontin himself or from representatives of the Coast Guard.

Based on the foregoing, the court finds that defendants have not demonstrated a specific need to depose Stein. Although defendants counsel represented at oral argument that Stein possesses specific personal knowledge as to how defendants allegedly violated the Licensing Agreement at issue herein, defendants have not identified what

that specific personal knowledge is. Moreover, much, if not all, of the information defendants claim to be seeking can be acquired from Pontin himself and/or representatives of Sea Tow. Accordingly, this factor weighs in favor of plaintiff. *See Patsy's Italian Restaurant v. Banas,* No. 06–CV–5857, 2007 WL 174131, at *3, 2007 U.S. Dist. LEXIS 4114, at *9 (E.D.N.Y. Jan.19, 2007) (finding that defendants had failed to demonstrate a specific need to depose plaintiff's counsel where the "information sought [could] be obtained from alternative means"); *ResQnet.com v. Lansa,* No. 01 Civ. 3578, 2004 WL 1627170, at *5, 2004 U.S. Dist. LEXIS 13579, at *13 (S.D.N.Y. July 21, 2004) ("As [defendant] has not specified particular subjects not already covered by the prior discovery and has not indicated why the information has not been or cannot be obtained through means other than [plaintiff's counsel's] testimony, it has not established the need for [plaintiff's counsel's] deposition . . . .").

### B. *Stein's Role in Connection with the Discovery Sought and the Pending Litigation*

■ The next factor to consider is the role of opposing counsel with respect to the discovery sought as well as the pending litigation as a whole. Stein has represented Sea Tow since approximately 1984, serving as its general counsel. (Decl. of Mitchell A. Stein ("Stein Decl."), dated Aug. 24, 2007, ¶ 2.) Defendants contend that Stein has personal knowledge of the Licensing Agreement at issue herein that exceeds the professional knowledge he has obtained as counsel to Sea Tow, rendering him a fact witness in this action. Stein asserts that he was not present during the negotiation of the Licensing Agreement, nor did he draft it, with the exception of one paragraph containing boilerplate language. (*Id.,* ¶¶ 2, 8.)

Defendants also maintain that Stein's testimony in the Florida action was given as a corporate representative of Sea Tow and not as Sea Tow's attorney. According to defendants, Stein testified to personal knowledge during the Florida action and as a result, should not now be permitted to claim that he does not have any personal knowledge in the within action. Plaintiffs, however, contend that Stein's testimony in the Florida action was provided because, at the time he testified, Stein was a named party in that action and because there was no one else available from Sea Tow to travel to Florida and provide the testimony. (*Id.,* ¶ 4.) Plaintiffs also maintain that the testimony Stein provided in the Florida Action was limited to his interpretation of the Licensing Agreement. (*Id.*) Plaintiffs assert that Stein did not testify to any facts with respect to the Licensing Agreement, and the alleged violations thereof, in the Florida Action but rather only provided his opinion as an attorney. (*Id.*)

A review of Stein's testimony in the Florida Action supports plaintiff's arguments. At the outset of the hearing that took place on September 20, 2006 in the Florida Action, counsel for Sea Tow in that action noted that Stein was providing testimony as "general counsel for Sea Tow" and that he was "making a qualified appearance" on behalf of Sea Tow. (Fl. Tr. I, 8–9.) Although Stein was not appearing in the Florida Action as counsel for Sea Tow in that particular action, such that he was not taking testimony or offering any arguments or evidence on behalf of Sea Tow, it is clear that he was still acting in his capacity as counsel for Sea Tow and not as a purely factual witness. In addition, the judge handling the hearing in the Florida Action noted that Stein was also a party to that action at the time his testimony was being provided. (*Id.,* 12.)

Moreover, the testimony that Stein provided in the Florida Action consisted of legal opinions, conclusions and interpretations of (1) the Licensing Agreement, (2) the alleged violations of the Licensing Agreement by Pontin, and (3) Sea Tow's legal obligations with respect to both Pontin's alleged contractual violations and the injunction entered by the Florida court nullifying Sea Tow's termination of the Licensing Agreement. On numerous occasions during his testimony, Stein merely read from the Licensing Agreement and other documents that were introduced into evidence and then offered his opinion or interpretation of the written portions he was asked to recite. In addition, Stein stated

several times during his testimony that he could not "speak for Sea Tow," (Tr. of Proceedings in *Pontin v. Sea Tow Servs. Int'l, Inc.*, No. 44–2007–CA–1111–K (Fla. Monroe County Ct.), dated Sept. 25, 2006, 88, annexed as Ex. B to Weinstein Aff. (hereinafter "Fl. Tr. II")), or "to what Sea Tow knew." (*Id.*, 99.) Stein also asserted the attorney-client privilege in response to various questions, (*Id.*, 97, 102, 156) and stated several times that a question was better directed to a corporate representative of Sea Tow because Stein did not possess the knowledge to answer the question. (*Id.*, 106, 109.) In fact, Stein was only asked one question concerning his alleged "personal knowledge" of defendants and the issues involved in the Florida Action, to which Stein replied that he had gained any such knowledge from listening to a tape recording.[3] (*Id.*, 113.)

Based on the foregoing, I find that Stein's role in the within action, as well as the Florida Action, was that of counsel to Sea Tow and not a fact witness. Accordingly, this factor also weighs in favor of Sea Tow.

### C. *Risk of Encountering Privilege and Work–Product Issues*

■ The third factor requires consideration of whether deposing opposing counsel would present a risk of encountering issues that are protected by the attorney-client privilege and the work product doctrine. Plaintiff asserts that "[a]ny and all information communicated to [Stein] by Sea Tow is privileged as it has been provided with [the] utmost confidence of privacy and for the use in protecting Sea Tow's interests." (Stein Decl., ¶ 3.) Defendants contend that the information they seek is not privileged and state that "Stein testified in the Florida Action and failed to raise any issues concerning the attorney-client privilege." (Def.Mem., 9.) However, as noted above, a review of Stein's testimony in the Florida Action indicates at least three instances in which Stein asserted the attorney-client privilege in response to questions posed to him. (Fl. Tr. II, 97, 102, 156.) In addition, since I have already found that Stein's role in both this litigation and the

Florida Action is that of counsel to Sea Tow and not of a fact witness, it follows that most, if not all, testimony that Stein could provide would be subject to the attorney-client privilege and the work product doctrine. Moreover, as discussed above, since defendants have failed to identify the specific personal knowledge they believe Stein to possess, it cannot be concluded with certainty that the subjects they seek to depose Stein on will not raise issues of attorney-client privilege. *See ResQnet.com, Inc.*, 2004 WL 1627170, at *6, 2004 U.S. Dist. LEXIS 13579, at *16–17 (finding that even though defendant "specifically indicated that it [was] not seeking privileged information," given the "topical areas" identified for the deposition, "the risk that privilege and attorney work-product issues might arise were [plaintiff's counsel's] deposition to go forward [was] not negligible").

Based on the foregoing, the third factor weighs in favor of plaintiffs.

### D. *Extent of Discovery Already Conducted*

The extent to which discovery has already been conducted is the final factor to consider. This factor weighs in favor of neither party. As represented by both parties, as of the oral argument on October 10, 2007, documents had been exchanged and several depositions had taken place, including that of Pontin, his son, Sea Tow's CEO, Joseph Frohnhoefer, and another representative of Sea Tow. However, counsel for defendants represented that approximately six more depositions still remained to be taken, including three or four more representatives of Sea Tow. All discovery is set to close on November 30, 2007. Accordingly, although discovery will be complete at the end of this month, as of the oral argument, there were still a number of depositions to be conducted, which renders this factor as weighing equally in favor of each party.

■ After considering "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship," *Fried-*

---

**3.** At oral argument in the within action, Stein asserted that he listened to this tape recording in

his capacity as counsel for Sea Tow, which the record appears to support.

*man,* 350 F.3d at 72, the court finds that plaintiff has sustained its burden with respect to its motion to quash the subpoena of Stein. Allowing defendants to depose Stein would impose a substantial burden on plaintiff and would serve little purpose, other than to disrupt and prolong this litigation, when fact discovery is nearly closed. Moreover, the court notes that there is a motion currently pending by which defendants seek to disqualify Stein from serving as counsel to Sea Tow in this action. The alleged "need" to depose Stein appears to be nothing more than another attempt by defendants to bootstrap Stein as a fact witness in the hopes of disqualifying him from this litigation entirely.

Accordingly, plaintiff's motion to quash the subpoena with respect to Stein's deposition is granted.

### III. *Documents Requested by the Subpoena*

The subpoena directed to Stein also requests "any and all records, documents and electronically stored information, to the extent it has not already been produced, including communications and correspondence with Plaintiff, regarding Plaintiff's claims against Defendants and Plaintiff's business operations, including but not limited to Plaintiff's interaction with Licensees and Franchisees." (Subpoena Duces Tecum of Mitchell A. Stein, dated Aug. 15, 2007, annexed as Ex. 1 to Stein Decl.) Such a request is patently overbroad and, to the extent it seeks "communications and correspondence" between Stein and Sea Tow, also requests documents that are likely privileged. Accordingly, plaintiff's motion to quash the subpoena with respect to the documents requested is also granted. *See Nova Biomedical Corp. v. i-STAT Corp.,* 182 F.R.D. 419, 423 (S.D.N.Y.1998) (affirming magistrate's order quashing subpoenas where the document requests contained in the subpoenas were overbroad and therefore unduly burdensome under Rule 45 of the Federal Rules of Civil Procedure); *United States v. Pelaez,* No. 96 Cr. 464, 1997 U.S. Dist. LEXIS 11334, at *3 (S.D.N.Y. Feb. 20, 1997) (quashing subpoena where the document request was "overbroad and a patent attempt at a forbidden 'fishing expedition' ") (quoting *United States v. Nixon,* 418 U.S.

683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

### CONCLUSION

For the foregoing reasons, plaintiff's motion to quash the subpoena of its counsel, Mitchell A. Stein, is granted.

SO ORDERED.

