OPINION OF THE COURT
Charles J. Markey, J.
In this vigorously fought and acrimonious litigation, where a plaintiff alleges that she was the victim of a major fraud perpetrated by a religious organization and its leader, the court has conducted numerous conferences. The court’s purpose has been to guide the litigation to an orderly resolution or conclusion. Yet, the experience of this litigation has shown that the court’s directives on discovery have been flouted. Now, among the interesting issues to be decided is whether counsel for one of the defendants violated a prior direction by the court forbidding counsel from instructing his client not to answer a question at the examination before trial. Also, at issue is whether a cross motion by one of the defendants seeking to disqualify plaintiffs counsel has any legitimate merit where a lawyer in plaintiffs law firm drafted a will for the plaintiff leaving most of plaintiffs estate to the defendant Temple and whether the three-year delay in filing the cross motion seeking the disqualification of plaintiffs counsel, made at the eve of trial, provides independent grounds for its denial.
Plaintiff in this breach of contract/fraudulent inducement action seeks damages for monies which she gave to defendants. Plaintiff was a member of defendant The Society of Shaolin Temple, Inc. (the Temple), a place of Buddhist worship at 132-11 41st Avenue, in Flushing, Queens County, New York. Codefendant Guolin Shi (Shi) was the president of the Temple at all relevant times.
In the complaint, dated April 26, 2007, the plaintiff alleges that she was defrauded of large sums of money by defendant Shi and members of the Temple. Defendant Shi’s verified answer is dated June 28, 2007. On November 25, 2009, defendant Shi’s counsel, Kenneth Jiang, Esq., filed a motion for summary judgment. The court adjourned the motion, pointing out the futility of seeking summary judgment at a predeposition stage in light of the many disputed factual issues. Since counsel for the parties could not agree civilly to a discovery schedule, the court and the undersigned’s Principal Law Clerk, Howard L. Wieder, Esq., spent numerous hours at conferences working out a discovery schedule and attempting to resolve other *247 disputes. On March 25, 2010, an extensive record was made in open court, with the court’s direction forbidding counsel from instructing their clients not to answer questions and preserving all objections at trial.
Shi, as noted, moved for summary judgment to dismiss the complaint and all cross claims on the ground that the monies given were donations by plaintiff to the Temple and that plaintiff cannot establish otherwise. Plaintiffs cross motion is to resume the examination before trial of Shi and for the witness, defendant Shi, to listen to an audio recording of an alleged telephone conversation between plaintiff and Shi and answer questions regarding it — in particular the identity of persons speaking on the recording. The cross motion centers on the propriety of Mr. Jiang directing his client, defendant Shi, not to answer questions regarding the tape recording, notwithstanding the court’s direction on March 25, 2010 forbidding such instructions. Defendant Shi opposes the cross motion and cross-moves to disqualify plaintiffs attorney from continued representation of the plaintiff, pursuant to rule 3.7 of the Rules of Professional Conduct (22 NYCRR 1200.0).
The case had actually first appeared on the calendar of the Trial Assignment Part on March 18, 2010 and was adjourned to May 20, 2010 and then to August 25, 2010. Finally, on August 30, 2010, the case was assigned to trial to the Honorable James Golia, J.S.C., for trial. Justice Golia has deferred the trial until motions pending before the undersigned are decided.
The Facts
Plaintiff testified that defendant Shi, her spiritual leader, pressured her into giving significant sums of money, indeed, hundreds of thousands of dollars, to the codefendant Temple. According to plaintiff, defendant Shi falsely and misleadingly told plaintiff that the money would be used to help finance a condominium project at the Temple site, and that in return for advancing the money, plaintiff would be given a sizable discount on the price of a penthouse apartment. When the project never materialized, plaintiff asked for her money back, but Shi refused.
Shi testified to the contrary. In substance, Shi testified that the project was for construction of a rental apartment; and that plaintiff’s payments to the Temple were voluntary contributions, not a quid pro quo for a condominium unit. Notably, there is no documentary evidence that there was ever any such project at all, rental or condominium.
*248 The affidavit of plaintiffs customer service representative at her bank, Sungho Kang, was also submitted. Kang avers that he had several conversations with plaintiff and Shi at the bank where plaintiff often went to withdraw the subject monies, and that the subject of the conversations was that plaintiff was getting a condominium unit at a reduced price. Shi admits to speaking with Kang, but claims not to remember the substance of their conversation.
Motion for Summary Judgment by Shi
It is well settled that the proponent on a motion for summary judgment has the initial burden to affirmatively demonstrate their prima facie entitlement to judgment as a matter of law (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Zuckerman v City of New York, 49 NY2d 557 [1980]). The moving party must tender sufficient admissible evidence to demonstrate as a matter of law the absence of a material issue of fact. Failure to make that initial showing requires denial of the motion, regardless of the sufficiency of the opposing papers (Wine-grad v New York Univ. Med. Ctr., 64 NY2d 851; Cendant Car Rental Group v Liberty Mut. Ins. Co., 48 AD3d 397 [2d Dept 2008]; Martinez v 123-16 Liberty Ave. Realty Corp., 47 AD3d 901 [2d Dept 2008]; St. Luke’s-Roosevelt Hosp. v American Tr. Ins. Co., 274 AD2d 511 [2d Dept 2000]; Greenberg v Manlon Realty, 43 AD2d 968 [2d Dept 1974]).
Here, upon the foregoing papers, in moving for summary judgment Shi merely contends that plaintiff cannot establish a prima facie case. A proponent’s burden, however, is not met by pointing out the gaps in the opponent’s proof (see Calderone v Town of Cortlandt, 15 AD3d 602 [2d Dept 2005]; Doe v Orange-Ulster Bd. of Coop. Educ. Servs., 4 AD3d 387 [2d Dept 2004]; Fromme v Lamour, 292 AD2d 417 [2d Dept 2002]). On a motion for summary judgment where the proponent has not affirmatively made out a prima facie case, the party opposing the motion is not required to assemble, lay bare and reveal her proof and show that her claims are capable of being established at trial (see Scott v Long Is. Power Auth., 294 AD2d 348 [2d Dept 2002]; Spearmon v Times Sq. Stores Corp., 96 AD2d 552 [2d Dept 1983]).
In any event, the conflicting testimony as to the purpose of the monies given raises issues of fact and credibility which cannot be resolved on a motion for summary judgment (see Medina v 203 W. 109th St. Realty Corp., 16 AD3d 220 [1st Dept 2005]). *249 Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978]). In reviewing a motion for summary judgment, the court must accept as true the evidence presented by the nonmoving party and must deny the motion if there is “even arguably any doubt as to the existence of a triable issue” (Baker v Briarcliff School Dist., 205 AD2d 652, 653 [2d Dept 1994]).
Since Shi’s motion merely asserts that he is moving to dismiss under article 32, without specifying which provision of the statute, the court will briefly note that the action is also not amenable to dismissal under CPLR 3211 (a) (7). Plaintiff’s claim against Shi is for fraudulent inducement. Specifically, it is alleged that Shi induced plaintiff to give the Temple $240,000 by promising plaintiff that she would be able to purchase, at a discount, a penthouse apartment in the condominium project allegedly to be built on the Temple site. Plaintiff contends that Shi knew at that time that there was no such project.
To state a cause of action for fraudulent inducement, it is sufficient that the claim alleges a material representation, known to be false, made with the intention of inducing reliance, upon which the victim actually relies, consequentially sustaining a detriment (Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403 [1958]; Megaris Furs v Gimbel Bros., 172 AD2d 209 [1st Dept 1991]). “An expression or prediction as to some future event, known by the author to be false or made despite the anticipation that the event will not occur, ‘is deemed a statement of a material existing fact, sufficient to support a fraud action’ ” (Cristallina v Christie, Manson & Woods Inti., 117 AD2d 284, 294-295 [1st Dept 1986], quoting Channel Master Corp. at 407). The court finds no basis for dismissing the action pursuant to CPLR 3211 (a) (7).
Shi also contends that plaintiffs allegations of fraud fail to satisfy the pleading requirements of CPLR 3016 (b) as to the individual defendant. Rejecting Shi’s contention, this court finds that plaintiffs complaint satisfies CPLR 3016 (b).
CPLR 3016 (b) provides that where a cause of action or defense is based upon fraud, “the circumstances constituting the wrong shall be stated in detail.” In such an action, “corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally” (Polonetsky v Better Homes Depot, 97 NY2d 46, 55 [2001]). The purpose of section *250 CPLR 3016 (b)’s pleading requirement is to inform a defendant with respect to the incidents complained of. The courts have cautioned that CPLR 3016 (b) should not be so strictly interpreted “as to prevent an otherwise valid cause of action in situations where it may be ‘impossible to state in detail the circumstances constituting a fraud’ ” (Lanzi v Brooks, 43 NY2d 778, 780 [1977], quoting Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194 [1968]). Thus, where concrete facts “are peculiarly within the knowledge of the party” charged with the fraud (Jered Contr. Corp., 22 NY2d at 194), it would work a potentially unnecessary injustice to dismiss a case at an early stage where any pleading deficiency might be cured later in the proceedings (see CPC Intl, v McKesson Corp., 70 NY2d 268, 285-286 [1987]; Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92, 97-98 [1st Dept 2003]; see also Siegel, 2003 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C3016:3, 2008 Pocket Part, at 17 [“Misrepresented have not been known to keep elaborate diaries of their fraud for the use of the defrauded in court”]).
Critical to a fraud claim is that a complaint allege the basic facts to establish the elements of the cause of action. Although under CPLR 3016 (b) the complaint must sufficiently detail the allegedly fraudulent conduct, that requirement should not be confused with unassailable proof of fraud. Necessarily, then, CPLR 3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct (see Polonetsky, 97 NY2d at 55 [alleged facts sufficient to permit a jury to “infer (defendant’s) knowledge of or participation in the fraudulent scheme”]; Lanzi, 43 NY2d at 780; Jered, 22 NY2d at 194).
In Polonetsky, for example, the complaint alleged that Better Homes marketed substandard properties to potential buyers at inflated prices under the guise of foreclosures offered below market value. The complaint alleged that repairs would be made for observable defects, along with other false assurances, and that potential buyers were discouraged from consulting their own attorneys, and instead steered to attorneys with ties to Better Homes. Finally, the complaint alleged that Better Homes’ president “participate[d] in [Better Homes’] operations on a day-to-day basis and [was] actively involved in its marketing and sales activities” (Polonetsky, 97 NY2d at 55). Taking the allegations in the light most favorable to the complainant, the Court of Appeals concluded that, under the circumstances, suf *251 ficient facts were alleged to permit a factfinder to infer that the individual defendant knew of or actually participated in Better Homes’ alleged scheme to defraud its consumers (id.). The Court of Appeals, significantly, noted that the inference was cognizable “given the degree of [the president’s] personal activities [within the organization] and the nature and extent of the customers’ dissatisfaction” (id.).
As alleged by the plaintiff, the fraud in this case was not an isolated incident, but rather a scheme that took place over a number of years. The very nature of the scheme, as alleged, gives rise to the reasonable inference — rebuttable though it may later prove to be — that Shi knew of and was involved in the fraud (see Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92 [1st Dept 2003]). Plaintiff has alleged only some specific details of defendant Shi’s conduct. Courts have consistently acknowledged that, in certain cases, less than plainly observable facts may be supplemented by the circumstances surrounding the alleged fraud (see Polonetsky, 97 NY2d at 55; Jered, 22 NY2d at 194; see also Board ofMgrs. of 411 E. 53rd St. Condominium v Dylan Carpet, 182 AD2d 551 [1st Dept 1992]).
Taken in the light most favorable to the nonmoving party, here the plaintiff, and according that party the benefit of every possible favorable inference, this court need determine only whether the facts as alleged are cognizable within the claim asserted to CPLR 3016 (b)’s satisfaction (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409 [2001]). It cannot be said, as a matter of law, that a finder of fact could not reasonably infer the requisite knowledge or participation by defendant Shi (see id.; see also Lanzi, 43 NY2d at 780; Jered, 22 NY2d at 194; Marine Midland Bank v Russo Produce Co., 50 NY2d 31 [1980]).
The court, accordingly, denies defendant Shi’s motion for summary judgment to dismiss. Numerous factual issues require a trial.
Cross Motion by Plaintiff to Resume Shi’s Deposition
The cross motion by plaintiff, pursuant to CPLR 3124 and 3126, is to resume the examination before trial of Shi solely for the purpose of listening to an audio recording of an alleged conversation between Shi and plaintiff and to answer questions regarding it, particularly the identity of the persons speaking on the recording.
Defendant Shi urges that plaintiff failed to establish a complete chain of custody of the tapes from the time they were *252 made until the time of the deposition, thus rendering them inadmissible. In examining the foundation laid in these cases, however, it cannot be said that the tapes are inadmissible.
The standard to be applied is that applicable to any real evidence sought to be admitted. In determining whether a proper foundation has been laid for the introduction of real evidence, the accuracy of the object itself is the focus of inquiry, which must be demonstrated by clear and convincing evidence (see United States v Fuentes, 563 F2d 527 [2d Cir 1977], cert denied sub nom. Sansone v United States, 434 US 959 [1977]). Accuracy or authenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it (cf. People v Julian, 41 NY2d 340 [1977]). The foundation necessary to establish these elements may differ according to the nature of the evidence sought to be admitted. For instance, a chain of custody is employed when “the evidence itself is not patently identifiable or is capable of being replaced or altered” (People v Connelly, 35 NY2d 171, 174 [1974] [drugs]). Mere identification by one familiar with the object, however, will be sufficient “when the object possesses unique characteristics or markings” and any material alteration would be readily apparent (id.; see People v Flanigan, 174 NY 356 [1903]).
Tape recordings made by a participant to a conversation do not fall within the category reserved for fungible evidence, such as drugs. The uniformity of these substances, making identification difficult, generally, justifies a requirement of tracing fungible goods through each hand with which it comes in contact. The inherent difficulty with fungible goods simply is not present when evidence of a conversation is sought to be introduced, for the conversation itself is unique and the participants are available to attest to its accuracy. Thus, a chain of custody is not required for the introduction of tape recordings such as those present here (see People v McGee, 49 NY2d 48 [1979], cert denied sub nom. Waters v New York, 446 US 942 [1980]; see also People v Ely, 68 NY2d 520 [1986]). A foundation may be established by a participant to the conversation who testifies that the conversation has been accurately and fairly reproduced (see United States v Amrep Corp., 560 F2d 539 [2d Cir 1977], cert denied 434 US 1015 [1978]; United States v Steinberg, 551 F2d 510 [2d Cir 1977]; United States v Knohl, 379 F2d 427 [2d Cir 1967], cert denied 389 US 973 [1967]; Monroe v United States, 234 F2d 49 [DC Cir 1956], cert denied 352 US 873 [1956]). Proof that the evidence has not been altered may be established in a similar fashion.
*253 On this record, there is sufficient proof of accuracy and authenticity of the tapes offered to warrant their admission. Indeed, plaintiff may testify as to the accuracy and authenticity of the tapes offered to warrant their admission. In any event, the infirmities concerning chain of custody or inaudibility properly go to the weight of the evidence, not its admissibility (cf. People v Julian, 41 NY2d 340 [1977]; People v White, 40 NY2d 797 [1976]).
The court, accordingly, grants the cross motion by plaintiff to resume the deposition of Shi. The court orders defendant Shi, at the resumed examination before trial, to answer the questions as to the identity of the parties on the tape.
The court expresses its frustration at the obstruction of the deposition of defendant Shi, held on April 21, 2010, by the repeated instructions of Kenneth Jiang, Esq., defendant Shi’s lawyer, not to answer questions, despite the clear direction of this court at a lengthy, on-the-record conference.
In the cross motion to compel a further deposition regarding the audiotape, plaintiffs counsel repeatedly refers to the March 25, 2010 conference in which the court warned prospectively against counsel instructing witnesses not to answer questions. Plaintiff’s counsel, however, failed to attach a copy of the transcript for the convenience of the court. The undersigned nonetheless ordered a copy of the transcript of the March 25, 2010 proceedings and has made it a part of the record.
On March 25, 2010, the undersigned’s Principal Law Clerk, Howard L. Wieder, held an off-the-record conference to help streamline the needed discovery. Even when it was thought that an agreement had been reached, the on-the-record conference that occurred on March 25, 2010 demonstrated the bitterness of counsel, each attacking the other side’s noncooperation. Plaintiffs counsel at the hearing accused defense counsel of dodging depositions and not showing up at scheduled examinations before trial. Mr. Jiang, in turn, repeatedly accused plaintiffs counsel of being engaged in a “fishing expedition.” The court, at the March 25 hearing, directed that examinations before trial must be held in April 2010, and, during the course of the depositions, there should be no direction by counsel not to answer, preserving all objections for the trial judge.
Despite the court’s warning in advance of the deposition, directing the lawyers not to instruct witnesses not to answer— obviously except for claims of privilege or other obvious reasons — Mr. Jiang directed his client, defendant Shi, not to *254 answer the questions. As stated by the federal court in Nunez v Puerto Rico Elec. Power Auth. (2007 WL 4618580, *1, 2007 US Dist LEXIS 95817, *4 [D PR 2007]):
“Instead of noting her objections on the record and allowing the deposition to continue, as would have been the proper procedure, Defendants’ counsel instructed the witness not to answer any of the questions posed. Consequently the depositions could not continue as the witness refused to provide responses. An attorney cannot unilaterally decide to exclude testimony from a witness.”
The court is frustrated by the lack of civility among counsel in this case. Even after several conferences in this case by the undersigned and Mr. Wieder, the undersigned’s Principal Law Clerk, culminating in the March 25, 2010 on-the-record conference, the attorneys for the parties kept on their vituperative attacks on each other. Mr. Wieder was constrained to hold additional conferences by telephone in late March and early April 2010, after receiving letters and telephone calls from counsel pointing to the other side’s alleged failure to cooperate on discovery.
The record is cluttered by letters with repeated cries for this court’s intervention on matters that should have been resolved by cooperation of counsel. Even when this court intervened and spent numerous hours on discovery issues, counsel were embroiled in discovery disputes.
Plaintiffs counsel, during the course of the deposition on April 21, 2010, continuously reminded Mr. Jiang of the undersigned’s prior warnings, and Mr. Jiang, while not styling his “advice” to his client as an instruction not to answer, in effect did so, barring his client from answering the questions of plaintiffs counsel. Mr. Jiang uses the Yiddish term of “chutzpa[h],” meaning nerve or temerity, to defend against the attacks made in plaintiffs cross motion. Mr. Jiang needs to be reminded of the quotation from the late, famed, British-born, American trial lawyer and author Louis Nizer (1902-1994), who stated: “When a man points a finger at someone else, he should remember that four of his fingers are pointing to himself.” (L. Nizer, My Life in Court, at 115 [Doubleday 1961].)
As stated by the Appellate Division, First Judicial Department, in Orner v Mount Sinai Hosp. (305 AD2d 307 [2003]):
“A complete reading of the depositions reveals that defense counsel’s attitude toward plaintiffs counsel *255 was sardonic and unprofessional which, in turn, fostered an uncooperative attitude from defendants’ witnesses. Indeed, ‘[defendants’ counsel, in ordering his clients not to respond during depositions to questioning in areas which counsel unilaterally deemed to be irrelevant, and in continually objecting to matters other than form . . . effectively thwarted plaintiffs’ efforts to depose defendants’ (Levine v Goldstein, 173 AD2d 346 [1991]). We take this opportunity to express our regret to these and other such fundamental principles of procedure and professional civility to an experienced defense lawyer.
“Further depositions will undoubtedly result in the same chaos, acerbity and delay. Accordingly, we direct that these depositions be conducted before a special referee. Similarly, all remaining discovery exchanges are to be conducted before or with the assistance of a special referee.” (Id. at 309-310; accord Minnick v Minnick, 109 AD2d 871 [2d Dept 1985] [approving of the lower court’s appointment of a special referee to supervise discovery].)
In the case at bar, in light of the bitterness of this litigation, and the fact that repeated court warnings have been intentionally broken, the court, on its own initiative and motion, appoints a special referee to supervise the continued examination before trial of defendant Shi. The court appoints Jeffrey Kim, Esq., a partner of the law firm of Kim, Patterson & Sciarrino, EC., in Bayside, Queens County, New York, as a special referee to supervise the remaining discovery and to hold settlement talks, following discovery. The court knows that Jeffrey Kim, Esq. is a respected and skillful trial lawyer and is on the Part 36 list of approved, qualified fiduciaries in Queens County.
The appointment of Jeffrey Kim, Esq. is made at the expense of Mr. Jiang personally. Imposition of appropriate sanctions, including attorney’s fees, is proper for disobeying a court’s order on discovery (see CPLR 3126; Keingarsky v Keingarsky, 145 AD2d 537 [2d Dept 1988]). The court directs that Mr. Jiang shall pay Mr. Kim’s fees and expenses. Mr. Kim shall be compensated at the rate of $300 per hour, including all of his related expenses and disbursements, including parking, meals, photocopying, etc. Mr. Jiang, in addition, shall pay the law firm of Dai & Associates, EC., within two weeks of the entry of this order, the sum of $2,000 for the making of the cross motion to *256 compel further discovery and for its time making a record at the prior examination before trial. The court orders Mr. Jiang to make that payment of $2,000 from his personal account and not to charge his client for it in light of his violation of this court’s express directions at the March 25, 2010 conference. In addition, the appearance fee for the court stenographer, at the continued deposition, shall also be made by Mr. Jiang personally. Dai & Associates shall pay for the copies of the transcripts of the continued deposition. If the aforementioned sums are not paid as directed, the undersigned will hold a hearing for both contempt and sanctions against the offender.
The continued deposition of defendant Shi shall occur at the offices of Dai & Associates, at a date to be selected by Mr. Kim, after consulting with counsel. At the continued examination before trial, defendant Shi is directed to answer all questions posed to him regarding the tape recording. In making this ruling and defending the instruction given by the undersigned at the March 25, 2010 conference, the court believes that the prospective instruction, warning counsel not to make instructions to a witness not to answer, was proper.
In making these rulings and its sua sponte decision, the court is mindful that it is not following the decision of the Appellate Division, First Department, in White v Martins (100 AD2d 805 [1984] [3-2 decision]), reversing a trial court for having directed prospectively that all questions to be asked at the deposition be answered, without knowing what those questions might be. In the present case, the audio evidence was germane to the facts in dispute. It was not a side trip on some unforeseen alley such as asking the plaintiff about irrelevant details of any prior litigations or questioning her on what she ate for breakfast or what subway train she took earlier that morning. The instruction by this court, at the March 25, 2010 conference, was clear that all questions were to be answered, and that all objections would be considered and ruled upon at trial. This court believes that in the 25 years following the holding by the Appellate Division, First Department, in White v Martins (100 AD2d 805 [1984]), increasingly other federal and state court judges and magistrates are using the prospective instruction used by the undersigned (see Morales v Zondo, Inc., 204 FRD 50, 54 [SD NY 2001] [imposing sanctions for attorney’s “detailed objections, private consultations with the witness, instructions not to answer, instructions how to answer, colloquies, interruptions, and ad hominem attacks”]; see also Matter of Osborne, 1 AD3d *257 31 [1st Dept 2003] [attorney disciplined for repeatedly showing disdain for a court’s discovery rulings]).
At any rate, as well observed by David Paul Horowitz, Esq., in an excellent article, Objections and Objectionable Conduct at Depositions (77 NY St BJ 20 [Jan. 2005]):
“The witness should be permitted to answer all questions subject to objections in accordance with CPLR 3115. CPLR 3113 (b) contemplates that the deposition shall proceed subject to the right of a person to apply for a protective order, and provides that the deposition shall be taken continuously.
“However, a party objecting on the basis of relevancy, and directing a witness not to answer, may be acting properly, such as when the questioner is trying to elicit facts that cannot be proven at trial. “Questions that should not be answered include those that
“1. infringe upon a privilege, or
“2. are so improper that to answer them will
substantially prejudice the party, or
“3. are grossly irrelevant or unduly burdensome.”
(Id. at 22-23 [footnotes omitted].)
The proposed questions propounded to defendant Shi at the April 2010 examination before trial but thwarted by Mr. Jiang’s obstructionist instructions went to the heart of the issues, were not grossly irrelevant or unduly burdensome, were not so prejudicially improper, and did not infringe upon any privilege. To the extent, as expressed above, that questions do not infringe on privileges, are not grossly irrelevant or burdensome, and are not substantially improper and prejudicial, this court still adheres to its instruction barring anyone from instructing witnesses not to answer a question.
Mr. Kim shall also supervise the remaining discovery in this case and ensure that all discovery is completed. When sufficient time has elapsed following the resumed deposition of defendant Shi, for the purpose of affording defendant Shi the opportunity to make any corrections to the transcript of his continued examination before trial, plaintiffs counsel, upon obtaining the approval of Mr. Kim, the special referee, shall contact the chambers of Justice James Golia and request a scheduling of the trial of this action.
*258 Cross Motion by Shi to Disqualify Plaintiffs Counsel
Defendant Shi cross-moves to disqualify the law firm of Dai & Associates, EC., from continued representation of the plaintiff.
The pivotal issue in this case is why plaintiff gave $240,000 to the codefendant Temple during the spring and summer of 2006. Plaintiff claims that the money was given to the Temple in anticipation of her purchase of a unit in a condominium apartment building that the Temple planned to build, as represented to her by Shi. Since the building was never built and may have been a sham concocted by Shi to obtain money from plaintiff, she wants her money back. The defendants Temple and Shi, on the other hand, claim that there was a project and that plaintiffs $240,000 was a free and unrestricted charitable donation towards it.
Plaintiff executed a last will and testament (the Will) in June 2006. The Will was prepared by Dawei Gongsun, Esq., who is still an attorney of Dai & Associates, EC., plaintiffs counsel in this action. In the Will, plaintiff leaves her entire estate, except for a few thousand dollars, to the Temple. The Will makes no mention of the money that plaintiff had given, and was planning to give, to the Temple or the reasons for making the Temple the object of her bounty. Plaintiff thus contends that the Will has nothing to do with the question of why plaintiff gave the Temple $240,000. Shi’s argument, however, is that the Will somehow inferentially supports his and the codefendant Temple’s argument that the $240,000 was a donation. In other words, defendants in the action maintain that if plaintiff planned to give the Temple all her money when she died, she must have meant to donate the $240,000 to the Temple while she was alive.
The action began when the Code of Professional Responsibility (Code) was in effect. On April 1, 2009, new Rules of Professional Conduct (Rules), found at 22 NYCRR 1200.0, became effective for New York, replacing the Code of Professional Responsibility.* Rule 3.7 of the Rules of Professional Conduct discusses “Lawyer as a Witness.” Rule 3.7, in pertinent part, provides:
*259 “(a) A lawyer shall not act as advocate before a tribunal in which the lawyer is likely to be a witness on a significant issue of fact. . .
“(b) A lawyer may not act as advocate before a tribunal in a matter if:
“(1) another lawyer in the lawyer’s firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client.”
First, no showing has been made that the testimony of Gong-sun, if called to the stand, would be prejudicial to the plaintiff, within the strictures of rule 3.7 (b) (1).
Second, whether a witness “ought” to testify is not alone determined by the fact that he or she has relevant knowledge or was involved in the transaction at issue (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437 [1987]). Disqualification may be required only when it is likely that the testimony to be given by the witness is necessary (Foley & Co. v Vanderbilt, 523 F2d 1357 [2d Cir 1975]). Testimony may be relevant and even useful, but still not necessary. A finding of necessity takes into account “such factors as the significance of the matters, weight of the testimony, and availability of other evidence” (see S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 446, [1987]; accord Talvy v American Red Cross in Greater N.Y., 205 AD2d 143, 152 [1st Dept 1994], affd on majority op below 87 NY2d 826 [1995]; see also Universal Athletic Sales Co. v American Gym, Recreational & Athletic Equip. Corp., 546 F2d 530, 538 n 21 [3d Cir 1976], cert denied sub nom. Super Athletics Corp. v Universal Athletics Corp., 430 US 984 [1977]; Foster Wheeler Corp. v Babcock & Wilcox Co., 440 F Supp 897 [SD NY 1977]). Testimony is necessary in situations where the attorney is the only person with firsthand knowledge of the issue on which the case hinges (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 445-446 [1987]).
Third, courts have invariably denied motions to disqualify either because the attorney in question did not have firsthand knowledge of a key issue in the case, or where her testimony would be cumulative of other available testimony or documentary evidence (see Congregation Talmud Torah Ohev Shalom R. Morris Kevelson v Sorscher, 69 AD3d 898, 899-900 [2d Dept
*260 2010] [remanding the issue of disqualification of counsel back to the lower court since after the trial court’s ruling that the testimony was cumulative and while the appeal was pending, the plaintiffs principal died, and thus the testimony might be considered to be necessary]; Eisenstadt v Eisenstadt, 282 AD2d 570 [2d Dept 2001]; accord Sea Tow Intl., Inc. v Pontin, 2007 WL 4180679, 2007 US Dist LEXIS 86806 [ED NY 2007]; Leonard v University of Del., 1997 WL 158280, 1997 US Dist LEXIS 4196 [D Del 1997]; United Food & Commercial Workers Health & Welfare Fund of Northeastern Pa. v Darwin Lynch Adm’rs, Inc., 781 F Supp 1067, 1069-1070 [MD Pa 1991]; Cannon Airways, Inc. v Franklin Holdings Corp., 669 F Supp 96, 100-103 [D Del 1987]; Zutler v Drivershield Corp., 15 AD3d 397 [2d Dept 2005]; Morgasen v Federated Consultant Serv., 174 AD2d 656 [2d Dept 1991]; Luk Lamellen u. Kupplungsbau GmbH v Lerner, 167 AD2d 451 [2d Dept 1990]).
In the case at bar, Gongsun does not have firsthand knowledge of the key issue of the case — namely, why plaintiff gave the Temple $240,000. Gongsun was not present during the conversations that took place between plaintiff and Shi concerning her reason for giving the Temple $240,000 — and Shi does not claim otherwise. Gongsun was merely present at the execution of the Will, which Shi claims inferentially supports his argument that the $240,000 was an outright gift.
Furthermore, even assuming, arguendo, that Gongsun’s testimony is supportive of Shi’s inferential argument, Gong-sun’s testimony about the Will’s execution would be cumulative to evidence provided by the Will itself or cumulative to the potential testimony of the two witnesses present at the execution of the Will. Defendant Shi failed to rebut plaintiffs contentions that (1) the pertinent events occurring during the negotiating period are memorialized in correspondence and other documentation obviating the need for Gongsun’s testimony other than for authentication purposes, if so required, and (2) two other witnesses were present during the signing of the Will and are available to testify to the key events surrounding the signing of the Will.
The court notes, moreover, that defendants delayed in seeking disqualification of Dai & Associates, EC., plaintiffs counsel, for a period of three years, even though they were well aware of Gongsun’s alleged “integral” role in preparation of the Will, the very basis upon which they now claim that her disqualification is required.
*261 Delay in making a disqualification motion is not a bar to that relief considering the paramount interest of the courts in being guardians and protectors of the Rules of Professional Conduct, and, here, in particular, rule 3.7 of the Rules of Professional Conduct (see M.A.C. Duff, Inc. v ASMAC, LLC, 61 AD3d 828, 830 [2d Dept 2009] [delay in making the motion to disqualify was excusable and not a bar to relief since counsel had timely raised the making of a motion at a preliminary conference, but yielded only to a directive by the court, at the time, to refrain from making the motion]; see e.g. California Earthquake Auth. v Metropolitan W. Sec., LLC, 712 F Supp 2d 1124, 1133 [ED Cal 2010] [motion to disqualify was not untimely]; Leathermon v Grandview Mem. Gardens, Inc., 2010 WL 1381893, 2010 US Dist LEXIS 32173 [SD Ind 2010] [in the face of a patent conflict of interest, 16-month delay in making a disqualification of counsel motion was excusable, even though six depositions had already been taken]).
In the present case, however, this court holds that the delay in bringing the cross motion to disqualify is pertinent and is additional and compelling grounds for its denial. Mr. Jiang’s verified answer is dated June 28, 2007. The case had actually first appeared on the calendar of the Trial Assignment Part on March 18, 2010. Only after Dai & Associates, EC., made its cross motion to compel discovery, citing Mr. Jiang’s obstructive behavior at the April 2010 deposition of Shi, did Jiang respond with his own cross motion to disqualify (see River W., Inc. v Nickel, 188 Cal App 3d 1297, 1311, 234 Cal Rptr 33, 43 [1987] [motion to disqualify should not have been granted where it was made 47 months after the moving party’s answer was filed]).
Mr. Jiang’s motives to file the cross motion to disqualify counsel are transparent. The cross motion was meant to harass and to get vindictive “payback.” Mr. Jiang filed the cross motion only after the plaintiff filed her cross motion for discovery sanctions against Mr. Jiang for his repeated instructions to his client during the deposition of April 21, 2010 not to answer the questions, in contravention of this court’s direction at the March 25, 2010 hearing. Mr. Jiang’s cross motion for disqualification was not filed because of a genuine concern for upholding the conflict of interest rules in the Rules of Professional Conduct, but as a perceived stratagem — misusing an important ethical code setting forth professional standards as a chessboard maneuver to get a checkmate, since the action was already on the trial calendar, and the trial date had been postponed repeatedly.
*262 The court denies defendant Shi’s cross motion to disqualify the firm of Dai & Associates as plaintiffs counsel.
The court appreciates the fact that Mr. Jiang is a well-respected and aggressive litigator. Yet, the tactics of interrupting the flow of a deposition that had been ordered by the court, disobeying this court’s instructions, and making an eleventh-hour motion to disqualify counsel are inappropriate. Finally, with equal relevance to the present case, the court concludes with the final observation noted by the federal court in Eggleston v Chicago Journeymen Plumbers’ Local Union No. 130, U.A. (657 F2d 890, 908 n 36 [7th Cir 1981]): “Nothing in this opinion is intended to imply any view whatsoever as to the possible merit of plaintiffs’ claims, but what has happened so far in this case is not the way to find out whether there may be merit or not.”

 Mr. Jiang’s cross motion to disqualify plaintiffs counsel makes a brief reference to both the new Rules and to the Code. Plaintiffs opposition refers only to cases, citing neither the old, repealed Code or the new Rules. Neither side has argued whether the Rules should be applied retroactively and whether a different result would occur depending on whether the court applies the Code or Rules. The court believes that application of the Rules, which became effective on April 1, 2009, is appropriate since the cross motion to disqualify, *259 dated July 9, 2010 and filed on July 21, 2010, was made after the Rules took effect.