**Imperium Blue Acquisition Partners, LLC v Marathon Asset Mgt., L.P.**

2024 NY Slip Op 33042(U)

August 28, 2024

Supreme Court, New York County

Docket Number: Index No. 650497/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    HON. MARGARET A. CHAN                          PART                    49M
                                            _Justice_

------------------------------------------------------------------X

IMPERIUM BLUE ACQUISITION PARTNERS, LLC,
IMPERIUM BLUE TAHOE, LLC; IMPERIUM BLUE TAHOE
HOLDINGS, LLC

                                    Plaintiffs,

                    - v -

MARATHON ASSET MANAGEMENT, L.P., MARATHON
REAL ESTATE ACQUISITION II, LLC,

                                    Defendants.

------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 650497/2024 |
| MOTION DATE | 03/22/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 7, 8, 9, 10, 11, 12, 13, 19, 20, 21

were read on this motion to/for _____ DISMISS _____.

Plaintiffs Imperium Blue Acquisition Partners, LLC, Imperium Blue Tahoe, LLC, and Imperium Blue Tahoe Holdings, LLC. (together, Imperium) are a Florida-based investment firm with a focus in resort properties. When plaintiffs entered into a purchase agreement with a non-party seller on July 28, 2021, to buy a resort property in South Lake Tahoe, CA, plaintiffs selected defendants Marathon Asset Management, LP and Marathon Real Estate Acquisition II, LLC (Marathon) for a $24,750,000 loan to finance this purchase. The purchase agreement had a strict closing date of December 6, 2021. Plaintiffs claim that defendants represented to them that because plaintiffs had prior loan transactions with them, defendants will exercise best efforts to timely close. Defendants failed to do so, requiring plaintiffs to quickly seek another lender and at a higher rate and additional costs. Plaintiffs therefore brings this action to recover the $75,000 deposit they had paid to defendants for the loan as well as damages in more than $3 million that were allegedly caused by defendants. Plaintiffs' complaint alleges causes of action[1] for fraud; breach of good faith obligations; promissory estoppel; and breach of contract. Defendants now move to dismiss the complaint.

For the reasons stated below, defendants' motion is granted in part and denied in part.

---

[1] Plaintiffs withdrew two causes of action: tortious interference with a prospective economic advantage, and unjust enrichment (NYSCEF # 19, Plfts' MOL at 5).

# BACKGROUND

In May 2021, plaintiffs submitted an offer to purchase resort properties from non-party sellers for $ 33 million (*id.* ¶ 15). The sellers ultimately opted for another buyer. But that deal fell through, so the sellers returned to plaintiffs and sweetened the deal on the condition that plaintiffs close the transaction by the end of 2021. Plaintiffs entered into a term sheet with the sellers on July 28, 2021 (*id.* ¶ 16).

To finance the transaction, plaintiffs explored a number of lenders but ultimately chose defendants because the parties had executed similar transactions in the past and, critically, defendants promised to streamline the closing by re-using paperwork from the parties' prior deals to forgo ALTA survey requirements, as it had done on prior deals (*id.* ¶ 18).

On November 2, 2021, after the parties in this action reached a preliminary financing agreement, plaintiffs entered into a purchase agreement with the sellers contracting to close the transaction on or before December 6, 2021 (*id.* ¶ 25). That same day, the parties signed a term sheet wherein defendants agreed to exercise best efforts to close the transaction on or before December 6, 2021 (*id.* ¶ 29; Plfts' MOL at 3). Plaintiffs then gave defendants the required $75,000 good faith deposit as specified under the terms of the term sheet (*id.* ¶ 29).

On November 3, 2021, defendants made their first diligence requests from the plaintiffs, and, on November 4, defendants began requesting the ALTA surveys that it had allegedly promised not to require of plaintiffs (*id.*). From that point on, according to plaintiffs, defendants continued "piling on surprise requests" that deviated considerably from both defendants' representations to plaintiffs and the way that they had handled prior deals (*id.* ¶¶ 31–32). Because plaintiffs found such requests to be unreasonable and a departure from defendants' recent promises, plaintiffs sought to terminate the transaction (*id.* ¶ 34). Defendants insisted that they would "do everything in their power to make [the deal] work for [plaintiffs'] team" (*id.* ¶ 36). Plaintiffs agreed to continue the transaction as long as defendants honored their word (*id.* ¶ 38).

After the parties agreed to continue the transaction, plaintiffs obtained the ALTA surveys allegedly at significant effort and expense (*id.* ¶ 48). Defendants then told plaintiffs that the December 6 closing date would be impossible and proposed a January 22, 2022 closing date (*id.* ¶ 53). Plaintiffs reminded defendants that a 2022 closing would be impossible because of their purchase agreement with the sellers to close by December 6, 2021 (*id.*). Although defendants told plaintiffs that it would be impossible to close, they inexplicably told plaintiffs that the draft loan documents "should be out tomorrow" (*id.* ¶ 54).

**650497/2024   IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET MANAGEMENT, L.P. ET AL**
**Motion No.  001**

**Page 2 of 8**

On November 23, 2021, rather than sending the loan agreement draft to plaintiffs, defendants simply told them that it would be impossible to close by the end of the year (*id.* ¶ 56). Plaintiffs, in response, requested to terminate the transaction for the second time (*id.* ¶ 57). Defendants insisted that plaintiffs contact the sellers to buy more time on the deal so that they could close (*id.* ¶ 58). Plaintiffs contacted the sellers, who agreed to a one-week extension to December 13, but defendants indicated that they still could not commit to that date (*id.* ¶ 59). Plaintiffs then demanded a refund of their $75,000 good faith deposit from defendants, who counter-offered returning $65,850 on the condition that plaintiffs release defendants from any and all future claims (*id.* ¶ 56). Plaintiffs refused (*id.*).

After the expiration of the exclusivity period between the parties, plaintiffs sought alternative financing, eventually obtaining a costly bridge loan (*id.* ¶¶ 67–69). Plaintiffs then negotiated with the sellers to push the close date out to December 30, 2021, which the sellers agreed to on the condition that plaintiffs make costly concessions (*id.*). On March 30, 2022, plaintiffs obtained financing from another non-party lender to pay off the costly bridge loan (*id.* ¶ 70).

According to plaintiffs, defendants' delays were intentional and in bad faith (*id.* ¶ 74). Plaintiffs claim that defendants were only delaying the transaction because defendants had reached their maximum collateralized loan obligation limit for 2021 and therefore needed to push the closing out to 2022 (*id.*). Plaintiffs posit that defendants had known all along that they would be unable to close the transaction by 2021 but made false promises to plaintiffs just to secure the transaction in the hopes of persuading plaintiffs to push the closing date out to 2022 when defendants' loan limit would renew (*id.*)

Plaintiffs bring this action against defendants alleging (1) fraud, (2) breach of good faith obligation, (3) promissory estoppel, and (4) breach of contract (Complaint ¶¶ 23–28). In its opposition, plaintiffs withdrew the causes of action for tortious interference with a prospective economic advantage and unjust enrichment (Plfts' MOL at 5). Each cause of action will be addressed in turn below.

## Legal Standard

On a CPLR 3211(a)(7) motion to dismiss, the court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide the plaintiffs with "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). A motion to dismiss pursuant to CPLR 3211(a)(1) may be appropriately granted "only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Morgenthow & Latham v Bank of N.Y. Co., Inc.*, 305 AD2d 74, 78 [1st Dept 2003] [internal citations and quotations omitted]). Under these circumstances, "legal conclusions and factual allegations [in the complaint] are flatly contradicted by

650497/2024   IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET MANAGEMENT, L.P. ET AL
Motion No. 001

Page 3 of 8

documentary evidence [such that] they are not presumed to be true or accorded every favorable inference" [international citations and quotation omitted] (*id.* at 78).

## DISCUSSION

Plaintiffs and defendants have a fundamental disagreement about what is in dispute. Defendants argue that "[t]his case begins and ends with a Term Sheet" (Dfts' MOL at 7), but plaintiffs contend that "[t]his is not a case that rises and falls with a Term Sheet" (Plfts' MOL at 5). Defendants paint this case as one in which they were not contractually bound to fulfill the terms of a term sheet, whereas plaintiffs are painting it as one in which defendants fraudulently induced them into an exclusive relationship with defendants, thereby barring them from actively pursuing other lending opportunities. And in the end, defendants allegedly cost plaintiffs $ 3 million in damages.

*Fraud*

Defendants argue that plaintiffs' fraud claim should be dismissed because the parties had signed the term sheet which clearly states that it is not a binding agreement. Defendants cite the following provision from the term sheet:

> "Under no circumstances should the terms and conditions contained herein constitute or be deemed to constitute a legally binding commitment on the part of [Marathon] or any of its affiliates, nor shall they be construed as an offer or undertaking by [Marathon] to issue, arrange or negotiate a commitment for the Proposed Financing or any other financing, or any commitment, offer, undertaking or agreement of any kind."

(*id.*). Defendants argue that plaintiffs cannot reasonably rely on an agreement that is non-binding (NYSCEF # 8 – Dfts' MOL at 1).

Plaintiffs, on the other hand, argue that defendants are mis-reading the Complaint because plaintiffs are not premising their causes of action on defendants' failure to complete the financing pursuant to the term sheet (Plfts' MOL at 7). Instead, plaintiffs argue, defendants' repeated misrepresentations and omissions that they would "expedite the underwriting process, would re-use former documentation and omit certain conditions to do so, and would use best efforts to meet deadlines it did not have any intention of meeting" form the basis of their Complaint (*id.*). In other words, plaintiffs are not bringing this lawsuit because of defendants' failure to fulfill the financing pursuant to the term sheet but instead because defendants had induced plaintiffs to enter into an exclusive business relationship with defendants by using a series of misrepresentations and omissions.

Plaintiffs point to the following omission: the true reason that defendants were "piling on surprise requests" and requesting diligence items that defendants

**650497/2024  IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET**          **Page 4 of 8**
**MANAGEMENT, L.P. ET AL**
**Motion No.  001**

promised it would not need is that defendants had maximized their collateralized loan obligation for 2021, and therefore needed to push the closing date out to 2022 (*id.* ¶ 74). Defendants' repeated misrepresentations and omissions allegedly resulted in a $3-million injury to the plaintiffs since plaintiffs had to re-negotiate extensions with the seller, acquire a costly bridge loan, and then enter into a new financing agreement with a new lender, who eventually closed the transaction (*id.* ¶¶ 70–72).

Under CPLR 3016(b), "the circumstances constituting the wrong shall be stated in detail." [1st Dept 2020]). "To state a cause of action for fraud, a plaintiff must allege 'a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages' [citations omitted]" (*Cohen Brothers Realty Corp. v Mapes*, 181 AD3d 401, 404 [1st Dept 2020]). Additionally, "material omissions of fact" can also constitute an element of fraud just as material misrepresentations can (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011]).

Here, plaintiffs sufficiently allege a claim for fraud: defendants' omissions and misrepresentations induced plaintiffs to initially secure and then help expedite a loan, when defendants' had motives to push the closing past December 2021, which caused plaintiffs injury (*see Held v Kaufman*, 91 NY2d 425, 431 [1998] ["[t]o state a cause of action for fraud, a plaintiff must show an intentional misrepresentation of a material fact resulting in some injury"]). While plaintiffs plead reasonable reliance on defendants' misrepresentations in a general manner, it is sufficient to withstand a motion to dismiss at this pre-discovery stage (*Cohen Brothers Realty Corp.*, 181 AD3d at 404 ["Actual knowledge . . . need only be pleaded generally, [given], particularly at the pre-discovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind" [internal citations omitted]). Moreover, as alleged, defendants' motive for pushing out the closing date was that defendants had maximized their loan obligation for the year. Defendants' underlying motives are within defendants' knowledge, and plaintiffs are ill-equipped to show those facts at this pre-discovery stage (*Jared Contracting Corp. v New York City Transit Authority*, 22 NY2d 187, 194 [1968] ["[i]t is almost impossible to state in detail the circumstances constituting a fraud where those circumstances are peculiarly within the knowledge of the party against whom the defense is being asserted."]).

Defendants present an argument in the alternative that plaintiffs' fraud claim is premised on a breach of contract claim and that "[c]laims arising out of breaches of contracts are not cognizable as fraud" (Dfts' MOL at 9). Again, plaintiffs are not premising their claims on the term sheet but on the material omissions and misrepresentations that defendants are alleged to have made not only in the lead-up to the signing of the term sheet but also each time that plaintiffs attempted to terminate the transaction. Moreover, if the term sheet is a non-binding contract, as

**650497/2024  IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET MANAGEMENT, L.P. ET AL**
**Motion No.  001**

**Page 5 of 8**

[* 5]

5 of 8

defendants assert, then it is not possible for the fraud claim to arise out of any contractual duty since there would be no contractual duty. The branch of defendants' motion to dismiss plaintiffs' fraud claim is denied.

*Breach of Good Faith Obligation & Contract*

In New York, "causes of action based upon breach of the covenant of good faith and fair dealing cannot be sustained absent a contractual obligation between the parties" (*Parkmerced Invs., LLC v WeWork Cos. LLC*, 217 AD3d 531, 532 [1st Dept 2023], citing *Duration Mun. Fund L.P. v J.P. Morgan Sec. Inc.*, 77 AD3d 474, 474-475 [1st Dept 2010]). "Absent the existence of a contract, a claim alleging breach of the implied covenant of good faith and fair dealing is legally unavailing [citations omitted]" (*Keefe v New York Law School*, 71 AD3d 569 [1st 2010]; *see also King Penguin Opportunity Fund III, LLC v Spectrum Group Management LLC*, 187 AD3d 688, 690 [1st Dept 2020]).

Here, defendants argue that because the term sheet explicitly states that "[u]nder no circumstances should the terms and conditions contained herein constitute or be deemed to constitute a legally binding commitment . . ." (NYSCEF # 11, Exh B to Dfts' MOL), the term sheet itself is not an unenforceable contract and, therefore, cannot be breached. Likewise, because there is no contract, there is no implied covenant of good faith, which does not exist in the absence of a contract (Dfts' MOL at 12–13). Defendants note that "no claims based on conditions explicitly addressed in the Term Sheet can succeed" (Dfts' MOL at 20).

Plaintiffs, on the other hand, argue that even if the term sheet itself is unenforceable, there existed an oral agreement between the parties that arose once plaintiffs attempted to terminate the agreement and defendants orally induced them to forgo the termination with redoubled promises to use best effort to close the transaction (Pltfs' MOL at 13–16). Thus, plaintiffs argue that, even if the term sheet in not binding as far as completing the financing, defendants were nonetheless bound underwriting the financing in good faith (Pltfs' MOL at 14). Plaintiffs also claim that defendants formed an oral contract by reassuring plaintiffs that they would be able to fulfill the terms of the contract.

However, because there is clear and unambiguous language in the term sheet outlining that the term sheet is non-binding and unenforceable, plaintiffs' argument that there is at minimum an implied good faith obligation in the term sheet is circuitous and unavailing. Further, plaintiff's argument that defendants' re-assurance to fulfill a contract that is already non-binding does not create a separate binding oral contract.

The branch of defendants' motion to dismiss the breach of contract and good faith obligation claims are granted.

**650497/2024   IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET MANAGEMENT, L.P. ET AL**
**Motion No.  001**

**Page 6 of 8**

[* 6]

*Promissory Estoppel*

To establish a claim for promissory estoppel, a plaintiff must show (i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance [citations omitted]" (*Caselloti v Free*, 138 AD3d 198, 204 [1st Dept 2016]). While plaintiff must show in detail each of these elements, at this pre-discovery stage, however, "no such showing is required to survive a motion to dismiss pursuant to CPLR § 3211(a)(7)" (*Villacorta v Saks Inc.*, 2011 NY Slip Op 51160(U) at 12 [Sup Ct, NY County 2011]).

Defendants', in arguing dismissal for plaintiffs' promissory estoppel cause of action, rely on *StarVest Partners II, L.P. v Emportal, Inc.*:

"Where a term sheet or other preliminary agreement explicitly requires the execution of a further written agreement before any party is contractually bound, it is unreasonable as a matter of law for a party to rely upon the other party's promises to proceed with the transaction in the absence of that further written agreement."

(101 AD3d 610, 613 [1st Dept 2012]; Dfts' MOL at 17). Defendants insist that the term sheet expressly conditions any completion of the financing on "due diligence review, the result of which must be satisfactory to [defendants] in [their] sole discretion' and makes plain that [defendants are] under no binding legal obligation to complete the Proposed Financing" (Dfts' MOL at 17). Plaintiffs reiterate that defendants are misreading their complaint and misrepresenting their position (Plfts' MOL at 16–17).

Plaintiffs again point out that their position is not based on the term sheet; rather, they would not have selected defendants as their lender but for defendants' representations that they would expedite the transaction through the re-use of prior diligence materials and the waiver of ALTA land surveys. Plaintiffs also point out that when they attempted to terminate the deal not once but twice, defendants made continuing assurances that they would exercise best efforts to close and "meet the December 6, 2021 deadline" (Complaint ¶¶ 46–47). But more than just the mere blanket assurance, plaintiffs allege that defendants assured plaintiffs that they would take certain steps to expedite the transaction and exercise best efforts, especially upon each of the two times plaintiffs tried to terminate the loan deal. However, defendants allegedly took none of the promised steps and, moreover, could not exercise best efforts since it was allegedly impeding the closing on purpose to buy themselves time to close in 2022.

Here, plaintiff has adequately shown that there is a clear and unambiguous promise that defendants would expedite the loan transaction for a closing in December 2021. It is undisputed that the parties had conducted prior deals together and defendants had foregone the ALTA surveys and other diligence materials for

**650497/2024   IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET MANAGEMENT, L.P. ET AL**
Motion No.  001

**Page 7 of 8**

7 of 8

plaintiffs in the past. Such prior conduct would have further induced plaintiffs to rely on defendants' promise that they would do the same for the similar transaction intended to close on December 6, 2021.

As for the alleged $ 3 million injury, plaintiffs make clear that once the transaction with defendants broke down, they needed to obtain costly bridge financing and extensions from the sellers, ultimately closing the financing transaction on December 30, 2021 (*id.* ¶ 69). Plaintiffs then had to pursue another lender in 2022 to pay off the bridge financing by March 30, 2022 and incurred more costs (*id.* ¶¶ 70–71). Considering that the closing with the new lenders occurred in 2021, plaintiffs have adequately alleged a causality here between defendants' actions and the injury suffered by plaintiffs.

At this pre-discovery and pre-answer stage in the proceedings, plaintiffs' cause of action for promissory estoppel survives defendants' motion to dismiss.

## CONCLUSION

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss is granted only to the extent that count two (good faith obligation), count three (tortious interference with prospective economic advantage), count five (unjust enrichment [quantum meruit]), and count six (breach of contract) are granted; and it is further

ORDERED that the branches of defendants' motion to dismiss is denied as to count one (fraud) and count four (promissory estoppel); and it is further

ORDERED that defendants have 30 days from the date of this Decision and Order to file their Answer to plaintiffs' complaint; and it is further

ORDERED that counsel for plaintiff shall serve a copy of this decision, along with notice of entry, on the defendants within 10 days of this filing.

08/28/2024
DATE

MARGARET A. CHAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

650497/2024   IMPERIUM BLUE ACQUISITION PARTNERS, LLC ET AL vs. MARATHON ASSET MANAGEMENT, L.P. ET AL
Motion No. 001

Page 8 of 8